769 So.2d 359 (2000)
Sam PARISI and Sam Parisi d/b/a Sam's Recycling, Inc., Petitioners,
v.
BROWARD COUNTY, Respondent.
No. SC93240.
Supreme Court of Florida.
July 14, 2000.
Rehearing Denied October 17, 2000.
*361 Paul R. Regensdorf of Akerman, Senterfitt & Eidson, P.A., Fort Lauderdale, Florida, for Petitioners.
Edward A. Dion, County Attorney for Broward County, and Andrew J. Meyers, Chief Appellate Counsel, Fort Lauderdale, Florida; Sharon L. Cruz, Interim County Attorney, Anthony C. Musto, Chief Appellate Counsel, and Tamara M. Scrudders, *362 Assistant County Attorney, Fort Lauderdale, Florida; and Noel M. Pfeffer, Interim County Attorney, Fort Lauderdale, Florida, for Respondents.
PARIENTE, J.
We have for review Parisi v. Broward County, 710 So.2d 981 (Fla. 4th DCA 1997), based on express and direct conflict with this Court's opinion in Johnson v. Bednar, 573 So.2d 822 (Fla.1991). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS
The present controversy evolved from Broward County's (the County) counterclaim for injunctive relief to prevent the petitioners, Sam Parisi and Sam Parisi d/b/a Sam's Recycling, Inc., from engaging in operations at their auto salvage yard (the Yard) that endangered the environment.[1] The trial court entered an order granting the County's request for injunctive relief and enjoined the petitioners from engaging in operations at the Yard causing the discharge of hazardous materials, as well as requiring the construction of additional secondary containment at the Yard.
The County subsequently moved to hold the petitioners in civil contempt for failing to comply with previous orders enjoining environmental hazards. At the conclusion of the hearing, the County stated that "[w]e're asking this court to exercise its power under the law and levy civil contempt fines. We would like those contempt fines secured by a bond." (Emphasis supplied.)
The trial court adjudged the petitioners in civil contempt and ordered the petitioners to post a "bonded fine" as a contempt sanction to secure performance of certain remedial measures on the property. See Parisi, 710 So.2d at 981. The contempt order required the petitioners to either post a bond or place funds in escrow pending their compliance with the court's orders to remediate contamination at the Yard.[2] The contempt order provided that the bonded fines would carry over "from year to year" until both the active remediation of the property and the monitoring phase concluded. The contempt order further provided that if petitioners failed to comply with the orders to remediate the property, the funds would revert to the County and petitioners' business could be shut down.
Petitioners argue that the trial court's order was deficient because it did not consider their financial resources to post the bond before imposing the contempt sanction. The Fourth District rejected this argument, finding that all that was required was that the trial court make a finding "that the contemnor had the ability to comply with the underlying order that required some type of action." Id. Accordingly, the Fourth District concluded that the contemnors'"ability to post the bond would become relevant in a motion for contempt for the failure to post it, where the county seeks the imposition of a fine under Johnson or of a purgeable jail sentence." Id.
On rehearing, Judge Warner dissented, concluding that the United States Supreme Court's decision in United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947), requires that:

*363 [A] court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant.
Parisi, 710 So.2d at 982 (quoting United Mine Workers, 330 U.S. at 304, 67 S.Ct. 677) (emphasis supplied). Judge Warner concluded that under this precedent, before imposing a civil contempt fine, including the "bonded fine" imposed here, the trial court must consider the financial resources of the contemnor. See id.
The core issue to resolve in this case is whether the "bonded fine" imposed is a valid civil contempt sanction. The County asserts that because the trial court did not impose a fine, but instead imposed a "bonded fine," there was no need to comply with the requirements applicable to contempt sanctions, including an inquiry into the financial resources of the contemnor. Alternatively, the County asserts that this "bonded fine" was a compensatory contempt sanction for which the financial resources of the contemnor do not need to be considered.

ANALYSIS
In exploring whether the imposition of a "bonded fine" constitutes a valid contempt sanction without consideration of the financial resources of the petitioners, we begin our analysis with a review the of the contours of contempt jurisprudence. "It has long been recognized that courts have the authority to enforce a judgment by the exercise of their contempt powers." Johnson, 573 So.2d at 824. The courts are granted this contempt authority because: "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter." United Mine Workers, 330 U.S. at 303, 67 S.Ct. 677. Broad, discretionary contempt powers provide the courts with the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227, 5 L.Ed. 242 (1821)). As this Court recognized in Johnson:
"[W]ithout authority to act promptly and independently the courts could not administer public justice or enforce the rights of private litigants." It is essential that our courts have the judicial power to enforce their orders; otherwise, judgments are only advisory. If a party can make oneself a judge of the validity of orders issued by trial courts, and by one's own act of disobedience set them aside, then our courts are devoid of power, and the judicial power, both federal and state, would be a mockery.
573 So.2d at 822 (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450, 31 S.Ct. 492, 55 L.Ed. 797 (1911)) (citations omitted).
While the inherent contempt power of a single judge is a bulwark of our legal system, the United States Supreme Court has also recognized that contempt power "uniquely is `liable to abuse.'" Bagwell, 512 U.S. at 831, 114 S.Ct. 2552. This is because in the area of civil contempt proceedings, "the offended judge [is] solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." Id. Thus, a balance must be struck between the recognition that courts are vested with contempt powers to vindicate their authority and the necessity of preventing abuse of these broad contempt powers. See id. at 831-32, 114 S.Ct. 2552.
Contempt sanctions are broadly categorized as criminal or civil contempt. Civil contempt sanctions are further classified as either compensatory or coercive sanctions. See Johnson, 573 So.2d at 824. The same contemptuous conduct may be *364 the subject of both criminal and civil proceedings.[3] The distinction between criminal and civil contempt often turns on the "character and purpose" of the sanctions involved. Bagwell, 512 U.S. at 827, 114 S.Ct. 2552 (quoting Gompers, 221 U.S. at 441, 31 S.Ct. 492). We have previously explained that "[t]he purpose of criminal contempt ... is to punish. Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court." Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985). On the other hand, a contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant." Bagwell, 512 U.S. at 827-28, 114 S.Ct. 2552 (quoting Gompers, 221 U.S. at 441).
The Supreme Court has also recognized that the stated purpose of a contempt sanction is not determinative of whether a contempt sanction is civil or criminal. See id. Further, regardless of whether a sanction is civil or criminal, "[w]hen a court imposes fines and punishments on a contemnor, it is not only vindicating its legal authority to enter the initial court order, but it also is seeking to give effect to the law's purpose of modifying the contemnor's behavior to conform to the terms required in the order." Id. at 828, 31 S.Ct. 492 (quoting Hicks v. Feiock, 485 U.S. 624, 635, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)). In fact, as the Supreme Court recognized in Bagwell, most contempt sanctions "to some extent punish a prior offense as well as coerce an offender's future obedience." Id.[4]
Notwithstanding the "somewhat elusive" distinction between civil and criminal contempt,[5] determining whether the contempt proceedings are civil or criminal is critical to the court and to the parties because the nature of the contempt both determines the procedures for adjudication and sets the parameters for the sanctions that can be imposed. Bagwell, 512 U.S. at 830-31, 114 S.Ct. 2552; see also Gregory v. Rice, 727 So.2d 251, 253 (Fla.1999) (quoting In re Amendments to Fla. Family Law Rules of Procedure, 723 So.2d 208, 213 (Fla.1998)). Because criminal contempt is "a crime in the ordinary sense," imposition of criminal contempt sanctions requires that a contemnor be afforded the same constitutional due process protections afforded to criminal defendants. Bagwell, 512 U.S. at 826, 114 S.Ct. 2552 (quoting Bloom v. Illinois, 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968)); see, e.g., Gregory, 727 So.2d at 253 (quoting Amendments, 723 So.2d at 213); Bowen, 471 So.2d at 1278. These rights include the right of criminal defendants to be represented by counsel, the right to have the State prove the offense beyond a reasonable doubt, and the right not to incriminate oneself. See Bagwell, 512 U.S. at 826-27, 114 S.Ct. 2552. Further, in criminal contempt sanctions involving imprisonment *365 for more than six months, defendants are granted the right to a jury trial. See id. In addition to these constitutional rights, our rules of criminal procedure provide specific procedures for both direct and indirect criminal contempt. See Fla. R.Crim. P. 3.830; 3.840.
On the other hand, "[b]ecause civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required." Bagwell, 512 U.S. at 831, 114 S.Ct. 2552. Thus, civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." Id. at 827, 114 S.Ct. 2552. While civil contempt sanctions do not require the same procedural and constitutional protections as criminal contempt, the key safeguard in civil contempt proceedings is a finding by the trial court that the contemnor has the ability to purge the contempt.[6]See id. at 829, 114 S.Ct. 2552; Gregory, 727 So.2d at 253-54 (quoting Amendments, 723 So.2d at 213); Pompey v. Cochran, 685 So.2d 1007, 1013 (Fla. 4th DCA 1997).
While there is a broad arsenal of coercive civil contempt sanctions available to the trial court, including "incarceration, garnishment of wages, additional employment, the filing of reports, additional fines, the delivery of certain assets, the revocation of a driver's license," to be a valid civil contempt sanction the contempt order must include a purge provision. Gregory, 727 So.2d at 254. Without this critical protection, there is a danger that the contempt sanction could be transformed from a civil to a criminal contempt sanction without any other underlying procedural protections attendant to criminal proceedings. See Bagwell, 512 U.S. at 827, 114 S.Ct. 2552; Pompey, 685 So.2d at 1013.
For example, incarceration may be either a criminal or civil sanction. If a fixed sentence of imprisonment is imposed for a "completed act of disobedience," then the contempt is punitive and criminal because the contemnor cannot avoid the confinement through compliance with the court's order. Bagwell, 512 U.S. at 828-29, 114 S.Ct. 2552. In contrast, if incarceration is imposed as a coercive civil contempt sanction, the ability to purge the contempt allows the contemnor to "carr[y] the keys of his prison in his own pocket." Id. at 828, 114 S.Ct. 2552.
The dichotomy between coercive and punitive imprisonment has been extended to contempt fines, requiring that contemnors be given the opportunity to first purge the underlying contempt by performing an affirmative act before the fine can be imposed. See id. The United States Supreme Court explained that a fine is criminal if "the contemnor has no subsequent opportunity to reduce or avoid the amount of the fine through compliance." Id. at 829, 114 S.Ct. 2552 (emphasis supplied).
An example of a valid coercive fine is a per diem fine imposed each day the contemnor fails to comply with the court's order, but when the contemnor complies with the underlying order, the requirement to pay the additional fines will be purged. See id. Similarly, the imposition of a fixed fine that is "imposed and suspended pending future compliance" with the court's prior orders is considered a purgeable sanction. Bagwell, 512 U.S. at 829, 114 S.Ct. 2552. In contrast, any "flat, unconditional fine" is considered a criminal sanction because it does not afford the opportunity to purge the contempt through compliance. Id.; see also United Mine *366 Workers, 330 U.S. at 305, 67 S.Ct. 677 (stating that a fine is coercive, rather than punitive, if "condition[ed] on the defendant's failure to purge itself within a reasonable time").
A second important protection applicable in civil contempt proceedings where a fine is imposed as a coercive sanction is that the trial court's discretion in imposing the amount of the fine is not unlimited. The United States Supreme Court explained that in determining the amount of a coercive or criminal fine the court
must ... consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.
It is a corollary of the above principles that a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant.

United Mine Workers, 330 U.S. at 304, 67 S.Ct. 677 (footnote omitted) (emphasis supplied); see Johnson, 573 So.2d at 824. Therefore, in imposing both criminal fines or coercive civil contempt fines, the court must consider the financial resources of the contemnor in setting the amount of the fine. See United Mine Workers, 330 U.S. at 304, 67 S.Ct. 677; Johnson, 573 So.2d at 824. Thus, in order to impose a valid coercive sanction, the trial court must both consider the financial resources of the contemnor before assessing the amount of the sanction and include a purge provision.

APPLICATION OF LAW TO THE FACTS
As noted above, a monetary fine as a contempt sanction may be legally imposed as a criminal contempt sanction, a coercive contempt sanction, or a compensatory contempt sanction depending on the purpose for which it is imposed, the procedures followed prior to its imposition, and the conditions under which the fine is imposed. We initially reject the County's argument that the bonded fine constitutes a valid compensatory contempt sanction. While courts have the unquestioned authority to order a civil contempt fine to compensate for losses sustained, "[i]f compensation is intended, the fine must be based on evidence of the injured party's actual loss." Johnson, 573 So.2d at 824 (emphasis supplied); see United Mine Workers, 330 U.S. at 303, 67 S.Ct. 677; South Dade Farms, Inc. v. Peters, 88 So.2d 891, 899 (Fla.1956); National Exterminators, Inc. v. Truly Nolen, Inc., 86 So.2d 816, 818 (Fla.1956), receded from on other grounds, Johnson, 573 So.2d at 825.
The bonded fine imposed in this case cannot constitute a valid compensatory sanction because the County did not submit any evidence to establish that the amount of the sanction was related to damages suffered as a result of the contemptuous conduct in violating the injunction. Further, the entire amount of the bond could be forfeited without any showing that the amount of the bond was related to the actual damages suffered by the County. There is no indication in either the trial court's order or the Fourth District's decision that this contempt sanction was considered a compensatory contempt sanction. See Parisi, 710 So.2d at 981. Accordingly, we analyze the imposition of the bonded fine to determine whether it constitutes a valid coercive civil contempt sanction.
We also agree with the petitioners that the bonded fine is an invalid coercive civil contempt sanction. Notwithstanding labels, the "bonded fine" imposed in this case was intended to have the same effect as any contempt sanction. Similar to a fine, the contempt order required the funds to be placed immediately in escrow or a bond to be posted immediately upon threat of the petitioners' business being *367 shut down. The contempt order indicated that the bond would be carried over "from year to year" for an indefinite period until both the active cleanup and monitoring phases of the remediation of the property had been completed. Pending compliance with the order to remediate the property, if the petitioners placed the funds in escrow, they would have been deprived of the use of the funds for a period of years. Alternatively, if the petitioners chose to post a bond, they would be required to pay the bond premiums.
Because the bonded fine was a civil contempt sanction, similar to a fine, the trial court erred in failing to consider evidence of the petitioners' financial resources before assessing the amount of the bonded fine. We conclude that the Fourth District misapplied this Court's decision in Johnson and agree with Judge Warner's dissent that the trial court should have considered the financial resources of the petitioners when determining what amount of bond constituted an appropriate civil contempt sanction.
We also question whether there was an additional deficiency in this contempt order because the petitioners were not afforded an opportunity to purge the underlying contempt. See generally Bagwell, 512 U.S. at 828-29, 114 S.Ct. 2552. However, we decline to reach this issue because it was not decided by the Fourth District in this case. Further, the Fourth District did not address the complicated procedural and factual history in this case.
Finally, although courts have broad discretion in formulating a valid contempt sanction, see Gregory, 727 So.2d at 254, we conclude that the hybrid contempt sanction in this casetermed a "bonded fine" should not be utilized by trial courts in the future as a contempt sanction because of the confusion it is likely to create both for the litigants and the courts. We emphasize that our disapproval of a bonded fine is not meant to restrict the ability of courts to impose creative contempt sanctions or to enter a valid injunction and require the posting of a bond incident to that injunction, where otherwise appropriate. See, e.g., Martin v. Pinellas County, 444 So.2d 439 (Fla. 2d DCA 1983); Fla. R. Civ. Pro. 1.610.
Accordingly, we quash the decision of the Fourth District and remand for further proceedings consistent with this opinion.
It is so ordered.
HARDING, ANSTEAD and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only with an opinion, in which SHAW, J., concurs.
LEWIS, J., concurs in result only.
WELLS, C.J., concurring in result only.
I concur in result only. I would quash simply for the reasons stated in Judge Warner's dissenting opinion.
I am concerned that the majority's very long analysis deals with issues which are not presented to us in this case.
SHAW, J., concurs.
NOTES
[1] The petitioners initially filed a complaint for declaratory relief and a motion for a restraining order in response to the County's administrative actions. Ultimately, the trial court dismissed the petitioners' complaint. However, the counterclaim filed by the County seeking injunctive relief remained viable.
[2] The contempt order required three separate bonded fines in the amounts of $285,000, $75,000, and $30,000. The first bonded fine required the amount of $285,000 to be held in escrow or posted as a bond until a remediation system had been constructed. Because petitioners have completed the construction of the remediation system, the $285,000 bonded fine is no longer at issue.
[3] In fact, the motion for civil contempt in this case was filed only after criminal contempt proceedings based on the same contemptuous conduct had been instituted, resulting in a hung jury.
[4] For example, imprisonment imposed to punish a contemnor for a completed act of disobedience may still have a coercive effect because the contemnor may be motivated to obey court orders in the future. See International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).
[5] Numerous scholars have criticized the traditional distinction between criminal and civil contempt as unworkable. See Bagwell, 512 U.S. at 827 n. 3, 114 S.Ct. 2552. As one commentator has observed: "Few legal concepts have bedeviled courts, judges, lawyers and legal commentators more than contempt of court." Id. (quoting Robert J. Martineau, Contempt of Court: Eliminating the Confusion between Civil and Criminal Contempt, 50 U. Cin. L.Rev. 677 (1981)); see Gino F. Ercolino, Comment, United Mine Workers v. Bagwell: Further Clarification of Civil and Criminal Contempt?, 22 New Eng. J. on Crim. & Civ. Confinement 291, 292-93 (1996); Philip A. Hostak, Note, International Union, United Mine Workers v. Bagwell: A Paradigm Shift in the Distinction Between Civil and Criminal Contempt, 81 Cornell L.Rev. 181, 217-18 (1995).
[6] As we recognized in In re Amendments to Florida Family Law Rules of Procedure, 723 So.2d 208, 213 (Fla.1998), and Gregory v. Rice, 727 So.2d 251, 253 (Fla.1999), Bagwell requires that we recede from Johnson v. Bednar, 573 So.2d 822 (Fla.1991), to the extent it required a purge provision only if incarceration was being ordered and not when a fine or other civil sanction was imposed.