819 So.2d 864 (2002)
Lewis J. LEVEY, Appellant,
v.
Joseph P. D'ANGELO, Americare Transtech, Inc., Americare Biologicals, Inc. and International Medical Associates, Inc., Appellees.
No. 4D01-795.
District Court of Appeal of Florida, Fourth District.
May 29, 2002.
Rehearing Denied July 12, 2002.
*866 John R. Kelso of Levey, Airan, Brownstein, Shevin, Friedman, Roen & Kelso, L.L.P., Coral Gables, for appellant.
Francisco J. Escalante, Miami, (Notice of Appearance-no brief) and Lisa A. Louck of Americare Health Scan, Inc., (withdrawn as counsel after filing brief) Miami, for appellees.
GUNTHER, J.
Lewis Levey (Levey), trial counsel for Henry Schur (Schur) and his wife Debra Ross (Ross), appeals the trial court's order finding him in indirect civil contempt and imposing imprisonment and a fine. The alleged contemptuous conduct occurred during Levey's representation of Schur and Ross in supplemental proceedings that Joseph D'Angelo (D'Angelo) filed against Schur to collect on a final judgment.
Levey argues that regardless of how the trial court characterizes the contempt citation, it is in fact an indirect criminal contempt, and as such he was denied due process. We agree.
D'Angelo's motion for indirect civil contempt alleged four grounds as comprising Levey's "stonewalling and stalling tactics" which warranted a finding of contempt.
As the first two grounds, D'Angelo alleged that Levey engaged in misconduct by repeated, last-minute cancellations of depositions and by improperly instructing witnesses during deposition. However, these two grounds cannot support the finding of contempt under review because Levey had previously been found in contempt for that conduct and had paid a fine imposed by the trial court.
As the third ground for contempt, D'Angelo alleged that Levey had stonewalled the production of certain tax documents belonging to Ross[1] claiming that, as a nonparty, Ross was not required to produce records.
As his final ground, D'Angelo alleged that, when faced with a request to produce financial records for the trust, Schur asserted that no actual trust existed. In response to that assertion the special master directed Schur and Ross to complete affidavits to that effect. Schur and Ross responded by partially complying through submission of incomplete affidavits.
During the hearing on D'Angelo's motion for contempt, the trial judge made it clear to the parties that the nature of the proceeding was that of an indirect civil contempt and Levey was afforded the opportunity to present evidence on his behalf.
At the conclusion of the hearing, the trial judge found that Schur, Ross, and Levey were in indirect civil contempt. Pursuant to this finding the trial judge ordered Schur and Ross to complete and forward all documents requested by D'Angelo under threat of a $5,000 per day fine for noncompliance. After questioning Levey regarding his financial condition, the trial judge sentenced him to 90 days in Broward County Jail, with what the judge termed a $25,000 purge. Levey's sentence was further modified in that if, within 30 days, Levey paid a $15,000 fine the sentence would be suspended. Finally, the trial judge advised Levey that he was forwarding a recommendation of disciplinary action to the Florida Bar. Levey requested 24 hours to make arrangements to pay the fine. The trial judge denied his request *867 and ordered that Levey be immediately taken into custody and remanded to the Broward County jail. Levey was jailed but later paid $15,000 to the clerk of the court and was released.
If a trial court's ruling consists of a mixed question of fact and law addressing certain constitutional issues, the ultimate ruling must be subjected to de novo review, but the court's factual findings must be sustained if supported by competent substantial evidence. See Stephens v. State, 748 So.2d 1028, 1031-32 (Fla.1999). The instant case presents this court with such a mixed question of fact and law.
Contempt may be either civil or criminal in nature. See Parisi v. Broward County, 769 So.2d 359, 363-64 (Fla.2000). The distinction between civil and criminal will determine both the quantum of proof required for conviction as well as the procedural due process to be afforded the alleged contemnor. See id. at 364. "The stated purpose of the contempt sanction is not determinative of whether a contempt sanction is civil or criminal." Id. The goal of civil contempt is remedial and for the benefit of the complainant, whereas the goal of criminal contempt is to vindicate the authority of the court and or otherwise punish for conduct offensive to the public. See id.; see also Nical of Palm Beach v. Lewis, 815 So.2d 647, 650 (Fla. 4th DCA 2002).
After careful examination of the facts, it is clear that the incarceration and fine imposed by the trial court was in the nature of punishment and vindication for Levey's alleged offensive conduct. We arrive at the conclusion that the trial court found Levey in indirect criminal contempt rather than indirect civil contempt by a process of elimination.
The contempt order under review was predicated upon a combination of past and continuing conduct: the past conduct consisted of stonewalling and improper deposition tactics; and the continuing stonewalling conduct was the failure of Schur and Ross to produce tax documents and affidavits related to the illusive Jennifer Trust. We now examine the goal of the contempt within that context.
First we will examine the contempt order to ascertain whether the incarceration and fine were imposed for coercion into compliance, or compensation for direct loss of the complainant. See Parisi, 769 So.2d at 364-65.
As explained earlier in this opinion, Levey had previously been sanctioned and fined for the conduct alleged as the first two grounds for contempt (cancellation of depositions and improperly instructing witnesses during deposition). That being so, such conduct cannot support the contempt citation now under review and warrants no further discussion.
Regarding the two remaining grounds for contempt, Levey was not being compelled to comply with any court order. Thus, as discussed in Parisi, no conduct could be corrected or coerced by his incarceration. Nor could Levey produce any of the tax documents or affidavits ordered by the trial court. All Levey could do was counsel his clients to either submit the tax documents or complete the affidavits as requested. Because Levey was not being ordered to do anything, and could not, thereby, avoid incarceration by complying with the order, it cannot be said that Levey "carr[ied] the keys to his prison cell in his own pocket." Id. at 365.
Neither can the contempt sanction in this case be characterized as anticipatory. If for the sake of argument we assume that the trial court intended to compel Levey to refrain from obstructive conduct in the future (an assumption not clearly supported by the language of the trial *868 court's order) we still must reverse since Levey is not ordered to refrain from any specific conduct. There is no specific or explicit conduct which he may undertake or refrain from undertaking, that will purge his sentence. As this court has held, a party may not be held in contempt where the court's order is not "sufficiently explicit or precise to put the party on notice of what the party may or may not do." Keitel v. Keitel, 716 So.2d 842, 844 (Fla. 4th DCA 1998).
Regarding the fine imposed on Levey, it cannot be characterized as compensation for loss to the complainant. As made clear in Johnson v. Bednar, 573 So.2d 822, 824 (Fla.1991) overruled on other grounds Parisi v. Broward County, 769 So.2d 359 (Fla.2000), if compensation is intended by a civil contempt fine, it must be based upon evidence of an injured party's actual loss. In this case the trial judge made no finding that D'Angelo had suffered any loss, nor is there support in the record for such a conclusion. Therefore, the fine cannot be characterized as compensation for loss.
As Parisi instructs us, "`any flat, unconditional fine' is considered a criminal sanction because it does not afford the opportunity to purge the contempt." Id. at 365 (quoting Int'l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 829, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)).
In this case, the idea that Levey could purge his contempt, notwithstanding the fact that the trial court called it a purge, was illusory. The original fine amount was $25,000, but Levey could reduce that fine by $10,000 if he paid $15,000 within 30 days. This does not allow him to avoid the fine altogether, but merely reduce the pain of the sanctionthere was no condition under which Levey could avoid a fine of at least $15,000. Therefore, in accord with Parisi the fine is per se criminal.
Thus, by a process of elimination, the contempt citation at issue cannot be characterized as one for indirect civil contempt with a goal that is remedial and for the benefit of the complainant. Instead, the goal of the contempt order under review is punishment and vindication. Thus, under Parisi, the trial court's order must be characterized as one for indirect criminal contempt. Having reached that conclusion, we now address whether Levey was afforded appropriate due process under the circumstances.
Rule 3.840 controls all actions for indirect criminal contempt. See Fla. R.Crim. P. 3.840 (1999). "A criminal contempt ... shall be prosecuted" on a judge's own motion, or upon the motion or affidavit of a person having knowledge of the facts. Id. An indirect criminal contempt will commence with the issuance of an order to show cause why the party should not be held in contempt. Id.
In the instant case there was no order to show cause issued placing Levey on notice that he must answer to allegations of criminal contempt. In fact, the trial judge's own repeated assertions during the hearing referred to the proceedings as indirect civil contempt.
This however does not end the matter. For that we turn to the Florida Supreme Court's decision in Pugliese v. Pugliese, 347 So.2d 422 (Fla.1977).
In Pugliese the court was faced with a similar situation in which the defendant was haled into court on what was characterized as a civil contempt. See id. at 423. Although confusion prevailed at the hearing as to whether the matter was indirect criminal or civil contempt, the trial judge spoke in terms of civil contempt, and imposed a sentence which was characterized *869 as punishment, not coercion. See id. at 425. The supreme court determined that because there was no purge provision the sentence was criminal in nature. See id.
In Pugliese as here, the requirement of an order to show cause was not met. However, the complainant in Pugliese argued that under In re S.L.T., 180 So.2d 374 (Fla. 2d DCA 1965), the defendant had been afforded adequate notice during the hearing that he was subject to indirect criminal contempt, and therefore had been afforded proper opportunity to be heard. See id. at 426. The court rejected this position stating that "the procedural requirements of Fla. R.Crim. P. 3.840 had not been observed, [and] petitioner had no means of suspecting the consequences of the hearing." Id. The penultimate paragraph of the court's opinion is of particular relevance to this case and we quote it in full:
We emphasize that in any instance where the trial court can reasonably anticipate that conduct of such a nature is present as will invoke the criminal contempt powers of the court to punish the offender, procedural due process of law demands that the proceedings be conducted in conformity with Fla. R.Crim. P. 3.840. If the trial court is of a mind in cases such as here presented to punish rather than coerce, then counsel for an offended party should be so advised when he makes application for an order of contempt so that proper affidavit and order to show cause can be secured to comply with the requirements of the rule. It is possible to convert civil contempt proceedings to criminal contempt proceedings after a hearing is commenced. Such a conversion would mandate the continuation of the hearing to provide for issuance of an order to show cause that complies with the rule with fair opportunity to the respondent to prepare and be heard. However, such practice flirts with procedural due process flaws. Accordingly, better practice suggests that such situations be anticipated in advance wherever possible so that the full due process safeguards required by Fla. R.Crim. P. 3.840 will be afforded.
Id. at 426-27.
In sum, although labeled indirect civil contempt by the trial court, the sanctions imposed on Levey by the trial court were tantamount to indirect criminal contempt. The incarceration and fine amounted to punishment for conduct offensive to the court, thereby converting the proceedings into indirect criminal contempt proceedings. Indirect criminal contempt proceedings require strict adherence to Florida Rule of Criminal Procedure 3.840, including proper notice. Those requirements were not met in this case. Thus, Levey was denied procedural due process. Therefore, we reverse the trial court's imposition of sanctions and remand for entry of an order directing the clerk of the courts to return the $15,000 fine imposed upon Levey.
REVERSED AND REMANDED WITH INSTRUCTIONS.
FARMER and SHAHOOD, JJ., concur.
NOTES
[1] During the course of this enforcement proceeding, D'Angelo claimed that a transfer of assets had been made to a trust established for Ross' daughter Jennifer ("the Trust"). D'Angelo implied the Trust alleging that a fraudulent transfer of stocks had occurred to avoid collection on the judgment.