ROBERTS, C.J.
The Appellant, -Amanda Edge-Gougen, seeks review of her conviction for direct criminal contempt. She argues that the trial court improperly found her in direct criminal contempt. We agree and reverse.
FACTS'
On the morning of November 14, 2014, the' Appellant finished a voluntéer activity and believed'she was off of work for the day. However,-in the early afternoon, she learned that one of her clients had & plea hearing -that day, which she then attended. -During the -plea hearing, the trial judge asked the Appellant and the prosecutor to *732 approach the bench. The judge stated that he had been told by two court employees that the Appellant smelled like alcohol. The judge asked her if she had been drinking, and she responded that she drank at lunch, but was not impaired. The judge asked her to take a breathalyzer test, to which she submitted. After the Appellant returned, the trial judge resumed the hearing and told those in the courtroom what had just transpired. The results of the breathalyzer were .082, .087, and .076 grams/100 milliliter BAL. The judge stated that the Appellant would not be permitted to represent the defendant. The judge then ordered her to be held in the county jail until she blew less than .08 g/100 ml. The bailiff informed the judge that if the appellant were booked in to the county jail, she would be required to stay a minimum of eight hours. The court scheduled a direct criminal contempt hearing for the following Monday, which was continued.
The Appellant moved to dismiss the contempt charge on the ground that direct criminal contempt requires that an intentional act be committed in the presence of the court, and this requirement was not met under the facts of this case. At a hearing on the motion, two witnesses testified that they had seen the Appellant immediately prior to the hearing on the day in question and neither had smelled any alcohol on the Appellant nor did the Appellant seemed impaired in any way. After hearing argument, the trial court found that the Appellant’s decision to come to court despite drinking at-lunch was an intentional act that provided the grounds for a direct criminal contempt charge. The court denied the motion to dismiss, found the Appellant guilty of direct- criminal contempt, and sentenced her to a suspended sentence of five months, 29 days in county jail with six months of probation.
ANALYSIS
A. Direct v. Indirect Contempt
A trial court may summarily punish direct criminal contempt if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. Fla. R.Crim. P. 3.830 (2015). Here, the State concedes that, because the conduct at issue, drinking, alcohol, occurred outside the presence of the judge, there was no direct criminal contempt. Additionally, there was no manifestation of contemptuous cpnduct within ,the courtroom. As such, the trial court abused its discretion in finding the Appellant in direct criminal contempt. ’
However, the State argues that the trial court’s finding of .direct criminal contempt was harmless because the Appellant was guilty of .indirect criminal contempt. See, Schaffer v. State, 429 So.2d 372, 372 (Fla. 3d DCA 1983) (finding that a conviction for direct criminal contempt was harmless when the appellant should have been convicted for indirect criminal contempt and the appellant received all the rights afforded by Florida Rule of Criminal Procedure "3.840, which governs indirect criminal- contempt). In this case, we find the Appellant’s conduct was not contemptuous, and as such, there was no indirect criminal contempt. ■ Criminal contempt requires some willful act or omission calculated to hinder the orderly functions of the court. Woodie v. Campbell, 960 So.2d 877, 878-79 (Fla. 1st DCA 2007) (internal quotations omitted). Here, there was no contemptuous act. The trial judge did not smell alcohol on the Appellant, and he did not observe any inappropriate behavior or deficient representation by counsel. Additionally, two witnesses testified that the Appellant was not impaired. The trial court stated he found it unlikely that this Court would find that it is acceptable behavior for an attorney to appear in court *733 under the influence. While this Court agrees that type of behavior is not acceptable, under the unique facts and circumstances of this case, we find there was no contemptuous conduct. As such, the trial court abused its discretion in finding the Appellant guilty of contempt of court.
B. Judicial authority
The trial court abused its discretion when it requested that the Appellant take a breathalyzer test and then detained the Appellant after receiving the breathalyzer results. First, the trial court’s authority did. not extend to ordering a breathalyzer when there was no lawful arrest or' probable cause that a crime had been committed. Second, the trial judge placed the Appellant in protective custody without any lawful authority. Both of these actions were improper and violations of due process.
1. Judicial authority to usé a breathalyzer
There is no specific statutory authority providing that a judge is permitted to ask an attorney practicing in front of the court to take a breathalyzer. However, this is not dispositive in this case. The authority to hold a person in contempt of court derives from the inherent authority of courts to enforce their orders and to protect the dignity of the judicial process. See The Fla. Bar v. Palmer, 149 So.3d 1118, 1120 (Fla.2013) (citing to Parisi v. Broward Cty., 769 So.2d 359, 363 (Fla.2000)). A judge should not be barred from using the technology of the breathalyzer to maintain the dignity of the legal process.
However, the provisions of the Florida Statutes that attach criminal penalties to driving under the influence provide that there must be a lawful arrest before a person is required to submit to a breathalyzer test. See Fla. Dep’t of Highway Safety v. Hernandez, 74 So.3d 1070, 1075 (Fla.2011) (citing to section 316.1932(l)(a)l.a., Fla.,Stat. (2011) (finding a, breath test must-be “incidental to a lawful arrest and administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving ... while under the influence of alcoholic beverages”)). Similarly, a statute governing the operation of a firearm provides that person may be required to submit to' a breathalyzer “if there was probable cause to believe that the person was using a firearm while under the influence of alcoholic beverages.” § 790.153(l)(a), Fla. Stat. (2015). Here, there was no lawful arrest prior to the admission of the breathalyzer test nor was there probable cause' to make a lawful arrest as there was no evidence presented that the Appellant broke any laws. As such, the trial court’s request that the Appellant submit to a breathalyzer was unlawful. '
 Additionally, the Appellant was questioned and asked, to submit to a breathalyzer test without being told that a criminal .contempt proceeding had begun. When the court is shifting from treating an attorney as an advocate to treating the attorney as a defendant, the attorney is entitled to be notified so that he or she may act accordingly. The trial court’s failure to inform the Appellant that she was now a defendant in a criminal contempt proceeding violated her due process rights.
2. Judicial authority to hold someone in custody
After receiving the results of the breathalyzer test, the trial court placed the Appellant in “protective custody” until subsequent breathalyzer results showed she was under the legal limit. Because judicial officers are conservators of the peace under the Florida Constitution, judges have the authority to hold a person in custody or to arrest a person. See Fla. Const. Art. 5, *734 § 19; § 901.01, Fla. Stat. (2015) (“Each state judicial officer is a conservator of the peace and has committing authority to issue warrants of arrest, commit offenders to jail, and recognize them to appear to answer the charge.”); Hill v. State, 132 So.3d 925, 929 (Fla. 1st DCA 2014) (“Judicial officers of this state are conservators of the peace with actual authority to effec-. tuate arrests.”); see also Op. Att’y Gen. Fla. 77-79 (1977) (opining that a circuit Judge had authority to make warrantless arrests for violations of the Uniform Traffic Control Law). As such, the- court had the authority to detain the Appellant. However, here, the trial court. did not place the Appellant under arrest. Rather, he placed her in “protective custody.” Florida law provides that a person can be placed in protective custody without consent. § 397.6772, Fla. Stat. (2015). Pursuant to the Marchman Act, a law enforcement officer can order a person placed in protective custody if there is a good faith reason to believe the person- is substance-abúse: impaired and because of such impairment has lost the power of self-control with respect to substance use and either has inflicted or threatened or attempted to inflict physical harm on him or herself or another person or is in need of substance abuse services,- but is unable to make that decision due to impairment. § 397.675, Fla. Stat. (2015). There is no evidence in the record that this is the situation here. As such, the trial court abused its discretion in ordering the Appellant to be held in protective custody.
Accordingly, the Appellant’s judgment of contempt is REVERSED.
MARSTILLER, J., concurs; MAKAR, J., concurs with opinion.