# Third District Court of Appeal

## State of Florida

Opinion filed January 8, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D22-2167 and 3D23-1291
Lower Tribunal No. 19-12435

_____

**Daniel Kaplan,**
Appellant,

vs.

**Kenneth B. Schurr, et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Jay M. Levy, P.A., and Jay M. Levy; Kahn & Resnik, P.L., and Marcy S. Resnik (Fort Lauderdale), for appellant.

Rafool, LLC, and Raymond J. Rafool and David Hazouri, for appellees.

Before EMAS, SCALES and BOKOR, JJ.

EMAS, J.

Plaintiffs Kenneth B. Schurr and the Law Offices of Kenneth B. Schurr, P.A., sued former client Daniel Kaplan (himself an attorney) for damages and other relief arising from a disparaging (and, as alleged, defamatory) internet post made by Mr. Kaplan on the "Ripoff Report," a consumer reporting website. The parties eventually resolved the lawsuit by way of a written settlement agreement adopted and ratified by the trial court and incorporated into its subsequent order of dismissal.

The settlement agreement and order of dismissal required Mr. Kaplan to "immediately upon execution of [the] Agreement," January 25, 2022, post on the Ripoff Report the specific apology attached to the Agreement. The apology was heavily negotiated, as the website would not remove the offending post, and specific wording was therefore required to effectively link the apology to the prior post that formed the underlying basis for the defamation action.

Mr. Kaplan failed to post an immediate apology thus violating the terms of the settlement agreement and dismissal order. Instead, weeks later (and only after plaintiffs filed a motion to enforce compliance), Mr. Kaplan posted an apology that varied materially from the language and wording of the apology negotiated and agreed upon by the parties as part of the settlement and dismissal.

After being notified of his continued non-compliance, on March 17, Mr. Kaplan posted a second version that once again failed to reflect the carefully crafted and agreed-upon apology.

Days later (March 21), Mr. Schurr filed a motion for an order to show cause, seeking civil contempt and/or criminal contempt sanctions. On March 28, 2022, a week after the motion for order to show cause was filed (and now two full months after the apology was to have been "immediately" posted), Mr. Kaplan posted a third apology this time in the negotiated and agreed-upon form and language (though it failed to include Mr. Kaplan's facsimile signature below the apology, as required by the terms of the settlement agreement).

Indirect criminal contempt proceedings followed. At their inception, the trial court appointed Raymond Rafool (plaintiff's lead counsel) to prosecute the criminal contempt. It then proceeded with the contempt hearing, heard testimony from both sides, found Mr. Kaplan in criminal contempt, and adjudicated him guilty, sentencing him to pay $1000 to a specified charity. The trial court also determined that plaintiffs were entitled to "restitution" in the form of attorney's fees and costs incurred for their counsel's participation in the criminal contempt proceedings. Following an evidentiary hearing to determine the amount of the fee award, the trial court entered a final order

3

awarding plaintiffs "$28,246.50 for the attorney's fees and costs incurred and paid . . . ."

In this consolidated appeal, Mr. Kaplan appeals the final judgment adjudicating him guilty and imposing sentence for indirect criminal contempt, as well as the final judgment awarding attorney's fees and costs in the amount of $28,246.50, to the plaintiffs, Kenneth B. Schurr and the law offices of Kenneth B. Schurr, P.A.

We affirm without elaboration the trial court's final judgment holding Daniel Kaplan in indirect criminal contempt, concluding the trial court strictly complied with the requisite procedures for indirect criminal contempt, and there was competent substantial evidence to support its determination that Mr. Kaplan willfully violated a clear and definitive court order when he failed to immediately post the specific apology attached to the parties' settlement agreement. See Hudson v. Marin, 259 So. 3d 148, 159-60 (Fla. 3d DCA 2018) ("Indirect criminal contempt results from conduct outside the presence of the trial court. It generally may be found where there has been (i) a violation of a clear and definitive court order, or (ii) the offending conduct was calculated to embarrass, hinder, or obstruct the court in the administration of

justice or calculated to lessen the court's authority and dignity.") (internal citations and quotation omitted).[1]

However, we reverse the final judgment awarding attorney's fees and costs to plaintiffs for legal services rendered by their attorney (Mr. Rafool) as the attorney appointed by the trial court to assist in the indirect criminal contempt proceeding. We hold that such an award of attorney's fees, under the circumstances presented in this case, was not authorized.[2]

We first recognize that, "[s]trictly speaking, criminal contempt proceedings are not criminal proceedings or prosecutions even though the act involved is also a crime." In re S.L.T., 180 So. 2d 374, 378 (Fla. 2d DCA 1965). This is because the "victim" of a criminal contempt (to the extent there is a

---

[1] We find no merit in the arguments advanced in Mr. Kaplan's brief; and the additional contentions made in oral argument were either not preserved below or not included in the initial brief. See Venezia v. Wells Fargo Bank, N.A., 306 So. 3d 1096, 1098 n.3 (Fla. 3d DCA 2020) (observing that, generally, the failure to properly raise and preserve a claim in the trial court waives the issue on appeal) (citing Sunset Harbour Condo. Ass'n v. Robbins, 914 So. 2d 925, 928 (Fla. 2005) and Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638 (Fla. 1999)); Hoskins v. State, 75 So. 3d 250, 257 (Fla. 2011) ("[T]his argument was not raised in the initial brief filed here. Accordingly, the claim is barred."); V.T. v. Liberty Dental Plan of Fla., Inc., 338 So. 3d 989, 990 (Fla. 3d DCA 2022) (noting the failure to raise an issue in the initial brief constitutes a waiver of that claim on appeal).

[2] We also reverse that portion of the final judgment of contempt to the extent it determined that plaintiffs were entitled to an award of fees and costs as restitution. That judgment is remanded for entry of an amended final judgment consistent with this opinion.

5

victim) is the court itself, and, as Florida courts have consistently reaffirmed, "criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court." Bowen v. Bowen, 471 So. 2d 1274, 1277 (Fla. 1985). "It is essential that our courts have the judicial power to enforce their orders; otherwise, judgments are only advisory. If a party can make oneself a judge of the validity of orders issued by trial courts, and by one's own act of disobedience set them aside, then our courts are devoid of power, and the judicial power, both federal and state, would be a mockery." Parisi v. Broward Cnty., 769 So. 2d 359, 363 (Fla. 2000) (quoting Johnson v. Bednar, 573 So. 2d 822, 822 (Fla. 1991)).

As the United States Supreme Court observed:

> The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches. "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery." Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L. Ed. 797 (1911). As a result, "there could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience." Ibid. Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated. The ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without which courts would be "mere boards of arbitration whose judgments and decrees would be only advisory."

<u>Young v. U.S. ex rel. Vuitton et Fils S.A.</u>, 481 U.S. 787, 796 (1987).

Where the criminal contempt occurs in the civil context, thus implicating a party to the underlying action (or that party's attorney), the opposing party in the underlying action is not a "party" to the indirect criminal contempt proceeding. By way of example, if the trial court held a criminal contempt hearing and ultimately determined the evidence was insufficient for a finding of criminal contempt, the opposing party in the underlying action would have no standing to appeal the trial court's decision. <u>See</u> <u>Pattinson v. Stephens</u>, 436 So. 2d 975, 976 (Fla. 5th DCA 1983) (dismissing appeal by former husband from trial court's order finding former wife <u>*not*</u> to be in criminal contempt, holding: "Even when an alleged criminal contempt arises out of a civil case it is not a part of the civil cause and a civil litigant has no standing to appeal the judge's determination that, under the circumstances presented, the dignity and authority of the court does not require a finding of guilt of criminal contempt.")

There are, of course, other features distinguishing indirect criminal contempt from other criminal offenses. One noteworthy example is found in Florida Rule of Criminal Procedure 3.840, which provides procedures to be followed by the trial court in an indirect criminal contempt proceeding. Subdivision (a) of that rule provides:

> The judge, on the judge's own motion or on affidavit of any person having knowledge of the facts, may issue and sign an order directed to the defendant, stating the essential facts constituting the

7

criminal contempt charged and requiring the defendant to appear before the court to show cause why the defendant should not be held in contempt of court.

Relevant to this appeal, subdivision (d) of the rule provides:

> The judge may conduct a hearing without assistance of counsel or may be assisted by the prosecuting attorney or by an attorney appointed for that purpose.

> Applied here, the trial court had three choices:

1) Conduct the hearing without the assistance of any counsel;

2) Conduct the indirect criminal contempt proceeding and "be assisted by the prosecuting attorney"; or

3) Conduct the hearing and "be assisted. . . by an attorney appointed for that purpose."

The trial court chose the third alternative, appointing Mr. Rafool to assist the court in conducting the indirect criminal contempt proceeding. This choice, while authorized under the rule of procedure regarding criminal contempt, surely did not mean that the legal services provided by Mr. Rafool, as appointed counsel, were automatically reimbursable as "restitution." And our conclusion remains the same even if (as Mr. Rafool testified) his client in the underlying litigation (Kenneth Schurr) paid Mr. Rafool for the legal services rendered by Mr. Rafool as the attorney appointed by the court to assist in the criminal contempt proceeding.

Ultimately, whether attorney's fees were properly awardable as restitution hinges on the nature of the contempt proceedings—were the proceedings (and

8

correlative fees awarded) intended to provide a remedy to Schurr and his law firm for services incurred in seeking enforcement of a court order (civil contempt) or to punish Kaplan for his willful violation of a court order (criminal contempt)? We find that the proceedings were primarily criminal in nature, for purposes of punishing Mr. Kaplan for violation of the court order, rather than enforcing compliance with the settlement agreement.

To this point, we note the distinction between a criminal act of contempt in violating a court order, and a civil act of contempt in failing or refusing to comply with a court order. A civil contempt is in the nature of a continuing violation (i.e., the continued refusal to comply with a court order) and a civil contempt proceeding is necessary to "coerce" the contemnor into complying with the order. In this sense, the civil contemnor "holds the keys" to the jail cell in his pocket, for he can "purge" the contempt by his voluntary compliance with the court order. See, e.g., Bowen, 471 So. 2d at 1277 ("[T]he purpose of a *civil* contempt proceeding is to obtain compliance on the part of a person subject to an order of the court. Because incarceration is utilized solely to obtain compliance, it must be used only when the contemnor has the ability to comply. This ability to comply is the contemnor's key to his cell.'") (alteration in original); Saunders v. Saunders, 183 So. 2d 239, 241 (Fla. 1st DCA 1966) (providing the civil contemnor "holds the keys to the jail in his pocket, and may purge himself

9

of contempt by paying the amounts found to be due by him to his wife as fixed by the terms of the final decree.")

In these circumstances, the opposing party is generally the beneficiary of the civil contempt proceeding, intending to compel the contemnor to do that which the court has ordered in the underlying litigation (e.g., sit for deposition, provide answers to interrogatories, or produce certain discovery materials). Thus, one might cogently argue that any legal efforts required by an opposing party to coerce or compel compliance with the court's order (including, for example, attorney's fees for preparing motions to compel compliance and/or seeking an order to show cause for civil contempt) could be reimbursable as a "compensatory fine." See, e.g., Fishman v. Fishman, 656 So. 2d 1250 (Fla. 1995) (holding a trial court's civil contempt power may be used to enforce the payment of attorney's fees directed to be paid by one former spouse to the other for fees incurred by the latter in enforcing visitation rights with the child); S. Dade Farms v. Peters, 88 So. 2d 891, 899 (Fla.1956) ("We are of the view that in a proper case there is adequate precedent to support the imposition of a 'compensatory fine' in civil contempt proceedings."); Ibis Constr. Co. v. Sinclair, 406 So. 2d 510 (Fla. 3d DCA 1981) (concluding the finding that the appellant was guilty of civil contempt was supported by the evidence, and the assessment of a compensatory fine which included the appellee's attorney's fees was justified by the circumstances and the applicable law).

In contrast, and as we noted above, the purpose of criminal contempt proceedings is "to vindicate the authority of the court or to punish for an intentional violation of an order of the court," and therefore, the "beneficiary" of those proceedings is the court, not the party to the civil action. Bowen, 471 So. 2d at 1277. Because of this distinction, the trial court in the context of an indirect criminal contempt proceeding generally cannot award attorney's fees as either restitution or a compensatory fine.

Admittedly, this case contains aspects of both civil and criminal contempt. To illustrate, the plaintiffs initially sought only to enforce the parties' settlement agreement incorporated into the dismissal of the defamatory action. It was only when Mr. Kaplan persisted in violating its terms that Mr. Schurr and his law firm sought both civil and criminal contempt sanctions for Mr. Kaplan's "willful violation" of the court's dismissal order. This overlap between civil and criminal contempt is not unusual, as courts have often observed that "[t]he same contemptuous conduct may be the subject of both criminal and civil proceedings." Parisi, 769 So. 2d at 363-64; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441 (1911) (citation omitted) ("Contempts are neither wholly civil nor altogether criminal," and "may partake of the characteristics of both"; therefore, "it may not always be easy to classify a particular act as belonging to either one of these two classes.") (quotation omitted).

Nevertheless, it is clear that the proceedings at issue (resulting in the attorney's fees award challenged on appeal) were initiated by the trial court not for the purpose of coercing Mr. Kaplan's compliance, but to punish Mr. Kaplan for his repeated and intentional violation of the court's order, and to vindicate the authority of the court. Indeed, by the time the trial court issued its order to show cause, Mr. Kaplan had posted an apology in compliance with the trial court's dismissal order incorporating the terms of the parties' earlier settlement agreement.

The trial court also relied on the language of the restitution statute, section 775.089(1)(c)1., Florida Statutes (2023) to characterize the award of attorney's fees as "restitution" to the "victim."  This statute provides for restitution to the victim of a crime, and defines "victim" in relevant part as follows:

> The term "victim" as used in this section and in any provision of law relating to restitution means:
>
> [] Each person who suffers property damage or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant's offense or criminal episode. . . . **The term includes governmental entities and political subdivisions,** as those terms are defined in s. 11.45, **when such entities are a direct victim of the defendant's offense or criminal episode _and not merely providing public services in response to the offense or criminal episode._**

(Emphasis added). But again, Mr. Schurr and his law firm were neither a party to the criminal contempt proceeding, nor the "victim" of the contumacious

12

conduct, as applied in the criminal contempt context. The act of criminal contempt was the intentional violation of the court's order.

To the extent Mr. Rafool was providing legal services during the indirect criminal contempt proceeding, these services were provided not to his client Kenneth Schurr, but instead to the trial court to assist the court in the criminal contempt proceeding for which Mr. Rafool was appointed. See Gordon v. State, 967 So. 2d 357, 358 (Fla. 4th DCA 2007) (holding that a trial court may appoint a party's attorney to "assist" in indirect criminal contempt proceedings and noting "an attorney appointed under rule 3.840(b) has a constituency of one—the judge who made the appointment.") Consistent with the restitution statute and rule 3.840(d), we hold that Mr. Rafool was, in effect, "providing public services in response to the offense or criminal episode" in the same way the prosecuting authority would have done had the trial court appointed the State Attorney's Office, as opposed to Mr. Rafool, to assist the trial court in the criminal contempt proceeding. The services rendered by Mr. Rafool, and fees incurred (and paid) by Mr. Schurr were not reimbursable as "restitution," and the trial court erred in awarding attorney's fees to Mr. Rafool or Mr. Schurr on this basis.

We further find persuasive the Fifth District's analysis in Routh v. Routh, 565 So. 2d 709 (Fla. 5th DCA 1990), which is on all fours factually. In Routh, the trial court appointed the former wife's counsel to assist in a criminal

13

contempt proceeding against the former husband. After entering judgment finding the former husband in indirect criminal contempt, the court also awarded attorney's fees for legal services rendered by the former wife's counsel in assisting in the criminal contempt proceedings against the former husband.

While recognizing the trial court had the authority (pursuant to rule 3.840) to appoint the former wife's counsel for this purpose, the Fifth District nevertheless reversed the award of attorney's fees, noting that "a contempt proceeding criminal in nature is instituted solely and simply to vindicate the authority of the court or otherwise punish for conduct offensive to the public in violation of an order of the court." Id. at 710 (quoting Demetree v. State ex rel. Marsh, 89 So. 2d 498, 501 (Fla.1956)). The court further observed that "[a] judgment of guilt of criminal contempt should, therefore, not inure to the benefit of a private individual." Id.[3] See also Lamb v. Fowler, 574 So. 2d 262, 263 (Fla.

---

[3] A word of caution is appropriate here. Counsel for both parties in this appeal acknowledged that Mr. Rafool could have declined the trial court's appointment to assist in the criminal contempt proceeding, leaving the trial court with the remaining choices of proceeding without the assistance of counsel or appointing the prosecuting authority to assist. See Fla. R. Crim. P. 3.840(d). Nevertheless, and considering the practicalities, we are not unsympathetic to the situation Mr. Rafool found himself in when the trial court advised him of that appointment.

Best practices would surely dictate that, before the trial court announces its intention to appoint private counsel (presumably the attorney representing an opposing party in the underlying litigation) to assist the court in an indirect criminal contempt proceeding, the court should inform counsel that he or she can decline the appointment but that, should they accept the appointment, the

14

1st DCA 1991) ("We agree with Lamb that if the lower court's order of contempt was properly entered for indirect criminal contempt, rather than for civil contempt, the award of attorney's fees for Fowler's attorney would have been improper.")

We hold that the legal services rendered by Mr. Rafool (and incurred by and paid for by his client, Mr. Schurr) in assisting the trial court in conducting the criminal contempt proceeding, were not reimbursable as "restitution" to the "victim," and the trial court erred in awarding those attorney's fees on this basis. Rather, "[i]n such circumstances, an appointed attorney 'stand[s] in the shoes of the state.'" Van Lent v. The Everglades Found., Inc., 49 Fla. L. Weekly D2169, 2024 WL 4610308 (Fla. 3d DCA Oct. 30, 2024), at *12 (Miller, J. concurring in result) (quoting Cronan ex rel. State v. Cronan, 774 A.2d 866, 877 (R.I. 2001)) (additional citations omitted).[4]

---

services rendered, and fees incurred (even if paid for by the client) will not be reimbursable as "restitution." Routh v. Routh, 565 So. 2d 709, 710 (Fla. 5th DCA 1990) ("If the court chooses to appoint an attorney [to assist in the criminal contempt proceeding], the manner of his compensation should be considered prior to the appointment.")

[4] In Van Lent v. The Everglades Foundation, Inc., 49 Fla. L. Weekly D2169, 2024 WL 4610308 (Fla. 3d DCA October 30, 2024), we rejected appellant's contention that the appointment of opposing counsel to assist the trial court in prosecuting the criminal contempt proceeding was fundamental error and violated Van Lent's due process rights. We note that Mr. Kaplan did not, either in the trial court or on appeal, raise the issue of whether the trial court can, consistent with concepts of due process, appoint opposing counsel to prosecute an indirect criminal contempt charge arising from a violation of a

We affirm the final judgment in 3D22-2167 to the extent it found Mr. Kaplan guilty of indirect criminal contempt, adjudicated him guilty of same, and imposed a monetary sanction of $1000.  We reverse that portion of the final judgment that determined plaintiffs were entitled to attorney's fees and costs as restitution in the indirect criminal contempt proceedings, and remand for entry of an amended final judgment consistent with this opinion.

We reverse the final judgment in 3D23-1291, awarding attorney's fees and costs to plaintiffs as restitution arising out of the indirect criminal contempt proceedings.

Affirmed in part, reversed in part, and remanded with directions.

---

civil court order, where the opposing counsel's client is the beneficiary of that underlying civil court order.