840 So.2d 325 (2003)
Felicia FISHER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3421.
District Court of Appeal of Florida, Fifth District.
February 14, 2003.
Rehearing Denied March 21, 2003.
*326 Barbara Twine-Thomas of Stewart, Joyner & Jordan-Holmes, P.A., Tampa, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Fisher appeals from an order holding her in contempt for failure to make restitution payments and from an order denying her motion to vacate the restitution order which was the basis for the contempt order. We reverse both orders.
These orders were rendered in connection with a juvenile delinquency proceeding involving Fisher's daughter, T.F. T.F., age thirteen, was charged with burglary and arson, after she and two other girls broke into a vacant house and set it on fire. The house burned to the ground. *327 T.F. and Fisher both signed an affidavit of indigency and a public defender was appointed for T.F.
On August 19, 1999, T.F. pled no contest, was adjudicated delinquent and placed in a Level 4 program. Fisher, as well as the public defender, were present. The amended order rendered after the delinquency hearing and sentencing states: "Restitution, parents responsible also, reserved right to restitution hearing to determine amount." This was the first notice or statement by the judge or the state that Fisher was to be held personally liable for restitution.
The restitution hearing was held on January 28, 2000. An employee of the Lake County Property Appraiser's Office testified the house was owned by Jeffrey and Belinda Richardson and in 1999, it had a total assessed value of $30,461 (land valued at $19,800 and the house at $10,661). Other witnesses testified it would cost $5,200 to demolish the house and $95,160 to replace it. Belinda Richardson testified her father lived in the house until he died in December 1996, and after that time the house was vacant. However, she testified the house contained antique furniture and other contents she valued at $25,000.
Fisher testified she was familiar with the house. It had been abandoned, some of the downstairs windows lacked window panes, and rats, racoons or snakes could be in the house. Additional testimony was apparently taken from Fisher[1] that she is a single parent and earns $45,000 a year. Fisher told the judge that with her income of $17.00 per hour, she could not afford to pay restitution for the house.
On February 1, 2000, the judge entered an order requiring Fisher to pay restitution in the amount of $25,861 ($5,200 for demolition, $10,000 for the contents of the house, and $10,661 for the house structure). He directed Fisher to pay $250 per month.
Fisher questioned the propriety of the restitution order at a February 22, 2001 hearing, and the court minutes reflect "the mother is ordered to pay." On February 26, 2001, Fisher wrote a letter to the judge disputing the amounts used to calculate restitution. She had information the property was in a dilapidated state and had been the subject of notices of code violations. She also disputed anyone would have left valuable antiques in a house in such condition. The judge treated the letter as a motion for rehearing and summarily denied it.
On May 15, 2001, a different judge issued an order directing Fisher to show cause why she should not be held in contempt for failure to pay restitution. A contempt hearing was held. Fisher apparently had paid $1,485 but then stopped making payments. She testified she is a registered nurse, earning $21 an hour. She rents her home and has legal custody of two grandchildren, ages three and four. She had $2,000 in a savings account. The judge held her in contempt and sentenced her to thirty days in jail with a purge provision of $500. She spent a month in jail. In August 2001, Fisher retained private counsel.
The state again petitioned for a rule to show cause why Fisher should not be held in contempt for failure to pay restitution.
A hearing ensued before the second judge on November 1, 2001. At that hearing, Fisher's defense counsel filed a motion to vacate the restitution order, arguing it was void ab initio because Fisher had not been properly noticed that she could be held personally liable for restitution in her daughter's case, and the court failed to *328 make a finding (or take any testimony which would support such a finding) that Fisher had failed to make diligent and good faith efforts to prevent T.F. from engaging in delinquent acts, pursuant to section 985.231(9), Florida Statutes. The judge denied relief on the ground that "parental diligence" was a defense Fisher had to establish and that this was not an element the state had to prove in order for the court to impose an order of restitution on a parent for the acts of a delinquent child.
The court then took evidence concerning Fisher's ability to pay the restitution amount. It found she had the ability to pay $250 per month as set forth in the prior order. On December 21, 2001, the court rendered an order holding Fisher in contempt and sentenced her to six months in jail, with a purge provision of $250. In another order rendered on the same date, it denied Fisher's motion to vacate the original restitution order. She appeals from both orders in this proceeding.
We conclude that the court improperly imposed restitution on Fisher without making the findings required by section 985.231. This statute provides:
(1)(a) The court that has jurisdiction of an adjudicated delinquent child may, by an order stating the facts upon which a determination of a sanction and rehabilitative program was made at the disposition hearing:
* * *
5. Require the child and, if the court finds it appropriate, the child's parent or guardian together with the child, to render community service in a public service program.
6. As part of the probation program to be implemented by the Department of Juvenile Justice, or, in the case of a committed child, as part of the community based sanctions ordered by the court at the disposition hearing or before the child's release from commitment, order the child to make restitution in money, through a promissory note cosigned by the child's parent or guardian, or in kind for any damage or loss caused by the child's offense in a reasonable amount or manner to be determined by the court.... A finding by the court, after a hearing, that the parent or guardian has made diligent and good faith efforts to prevent the child from engaging in delinquent acts absolves the parent or guardian of liability for restitution under this subparagraph.

7. Order the child and, if the court finds it appropriate, the child's parent or guardian together with the child, to participate in a community work project, either as an alternative to monetary restitution or as part of the rehabilitative or probation program.
* * *
9. In addition to the sanctions imposed on the child, order the parent or guardian of the child to perform community service if the court finds that the parent or guardian did not make a diligent and good faith effort to prevent the child from engaging in delinquent acts. The court may also order the parent or guardian to make restitution in money or in kind for any damage or loss caused by the child's offense. The court shall determine a reasonable amount or manner of restitution, and payment shall be made to the clerk of the circuit court as provided in subparagraph 6. (emphasis added)
Restitution was imposed on Fisher pursuant to subsection (9) quoted above, since it was not being ordered in connection with a probation program or a community *329 based sanction but rather as part of the sanctions initially imposed on T.F. The language in subsection (6) is different than in subsection (9), lending itself somewhat to the judge's interpretation, that it is a defense a parent must establish to escape from sanctions, although we do not address that issue in this case.
Subsection (9) requires the court to find that the parent or guardian did not make a diligent and good faith effort to prevent the child from engaging in delinquent acts before ordering a parent or guardian to perform community services. As we held in B.M. v. State, 744 So.2d 505 (Fla. 5th DCA 1999), although the next sentence in subsection (9) permitting the court to impose restitution on a parent or guardian does not expressly require a similar finding, such a required finding is implied from the structure of the statute. Accord J.C.R. v. State, 785 So.2d 550 (Fla. 4th DCA 2001). Holding a parent vicariously liable for a child's harmful or delinquent acts is a departure from the common law, and statutes imposing such liability should be construed narrowly.[2]
In this case, no finding was made that Fisher failed to make a diligent and good faith effort to prevent T.F. from engaging in the delinquent act involved in this case or any other. Nor was any evidence presented concerning Fisher's parenting efforts. In B.M., we noted there were procedural problems with how and when such a hearing should be held pursuant to section 985.231, and whether a parent or guardian would be entitled to state representation at such a hearing. We simply remanded to the trial court to conduct a hearing.
Since that time, the juvenile rules have been amended to remedy our procedural due process concerns when the state seeks restitution or other sanctions against parents or guardians of delinquent children. See Fla. R. Juv. P. 8.040, 8.030, 8.031.[3] Effective January 1, 2001, the rules provide that the state must file and serve a petition on the parents or guardians in cases where restitution or other sanctions are sought against them. The petition must set forth facts to establish the appropriateness of imposing sanctions on them, and service must occur 72 hours before the *330 hearing concerning imposition of the sanctions.
The state argues that even if a "diligence and good faith hearing" was not held in this case and the statute required it, Fisher should have raised that issue in a direct appeal and that since she did not do so she has waived this defect. Thus the validity of the restitution order has become the law of the case. Normally what the state argues would be true, if the judgment being collaterally attacked was not void. See Cesaire v. State, 811 So.2d 816 (Fla. 4th DCA 2002)(person cannot be compelled to obey a void order); Synchron, Inc. v. Kogan, 757 So.2d 564 (Fla. 2d DCA 2000)(disobedience of a void order, judgment, or decree, or one issued by a court without jurisdiction of the subjectmatter and parties, is not "contempt"); In re Elrod, 455 So.2d 1325 (Fla. 4th DCA 1984)(a court does not have contempt powers to enforce violations of its orders if they are rendered without jurisdiction over the subject matter or the parties or transcend its power or authority).
Fisher argues that the restitution order is void because the court did not acquire personal jurisdiction over her. She was never served with process in her daughter's case nor was there any pleading directed at her to put her on notice she could be held personally liable for a restitution order in her daughter's delinquency case. However, a party can make a voluntary appearance and submit to the jurisdiction of a court even where the party is not served with process. Manufacturers National Bank of Detroit v. Moons, 659 So.2d 474 (Fla. 4th DCA 1995); McKelvey v. McKelvey, 323 So.2d 651 (Fla. 3d DCA 1976); § 985.219(1), Fla. Stat. Fisher appeared numerous times before the court and even challenged the merits of the restitution order. Thus she may have submitted herself to the jurisdiction of the court. See Hall v. State, Department of Health and Rehabilitative Services, 487 So.2d 1147 (Fla. 1st DCA 1986).
However, there is another fatal defect in these proceedingslack of noticeand thus it follows, lack of due process. See Wolf v. Department of Health and Rehabilitative Services, 588 So.2d 335 (Fla. 5th DCA 1991). Fisher was not a party to her daughter' juvenile proceeding. She appeared only in her capacity as a concerned parent and possible witness. There were no pleadings or allegations which could have put her on notice that the state would seek restitution against her personally, prior to the August 19, 1999 hearing, which resulted in the restitution order imposed against her. Nor was she put on notice that sanctions, including contempt, could be imposed against her personally for failure to pay restitution. A contrary ruling from us would create an "Alice in Wonderland"[4] situation in which witnesses or friends and supporters of a defendant could be held personally liable for the defendant's misdeeds merely because they sat in the courtroom during the trial.
The dissent complains Fisher posed no objection to the August 19, 1999 order or to the subsequent hearing on the amount of restitution to be imposed. Had Fisher been properly noticed that she was potentially going to be held liable for restitution in this case, she could have come to the hearing with her own counsel, cross-examined witnesses, and presented her own evidence. She was clearly ill prepared to defend against the merits of the imposition of restitution sanctions, based on section 985.231(9) and the propriety of the amounts being sought. After the August 19, 1999 hearing, it was all down-hill for *331 Fisher. She was never given a chance to dispute the validity of the imposition of sanctions against her, only the amount of restitution ordered, which was summarily denied.
Because the restitution order was rendered without due process, it is void as to Fisher. See S.B.L. v. State, 737 So.2d 1131 (Fla. 1st DCA 1999). A void judgment may be attacked at any time because the judgment creates no binding obligation on the parties, is legally ineffective and is a nullity. Greisel v. Gregg, 733 So.2d 1119 (Fla. 5th DCA 1999).
The order finding Fisher in contempt for not complying with the restitution order is also void since it was based on the void restitution order. We reverse both orders involved in this appeal. Our ruling in this case is without prejudice to the right of the state to seek to reimpose restitution sanctions against Fisher, should that be appropriate under the new juvenile rules, which now govern such cases.
REVERSED.
PLEUS, J., concurs.
COBB, W.H., Senior Judge, dissents with opinion.
COBB, Senior Judge, dissenting.
On August 19, 1999, a disposition hearing was held in a juvenile delinquency case wherein the minor daughter of Felicia Fisher was charged with burglary of a structure and arson. As a result of that hearing, which was attended by Fisher, an order was entered on September 19, 1999, providing for post-commitment community control whereby the parents of the juvenile would also be responsible for restitution for destruction of the burned house and its contents. The amount of restitution was to be set at a subsequent hearing. Fisher posed no objection to this order or to the setting of a subsequent hearing.
The hearing in regard to the amount to be set for the house which had been burned was held on January 28, 2000. Again, Fisher was present at the hearing. Various witnesses were called to establish the value of the house and its contents. Fisher herself testified that the house was abandoned and in horrible conditionbut she did not contend that she was not liable nor that she had not been notified that joint liability had been imposed against her. Her testimony at this hearing was directed to the value of the destroyed house and the extent of her liability to pay for it.
In orders filed February 1, 2000 and February 14, 2000, the trial court found that Fisher should pay the sum of $25,861.00 to the Richardsons, the owners of the house. Based on Fisher's testimony that she earned $45,000.00 per year, the court set monthly payments at $250.00. These orders were not appealed. A year later, Fisher sent a letter to the court contending the amount of restitution was unreasonable. Again, she failed to raise any challenge to her liability for restitution owed to the Richardsons and, in fact, said she was not trying to avoid paying restitution.
Now, several years later, Fisher argues on appeal that the trial court lacked authority to enter a restitution order against her because it did not make a finding of lack of parental diligence. She cites to B.M. v. State, 744 So.2d 505 (Fla. 5th DCA 1999) in support of her argument. In B.M., however, the lack of such finding was raised on direct appeal, and that did not happen here. Fisher has never requested a hearing on the issue of her obligation; she has only protested the amount and her ability to pay, and even *332 then she did not appeal those issues. The issue of liability was waived years ago.
It is clear from the language of section 985.231, Florida Statutes, that the legislature intends to hold minors and their parents responsible for the monetary damage done to other people. The statutes specifically give the trial court the authority to hold a parent financially responsible for the act of a child. Clearly, the restitution order is not void as contended by the majority. As pointed out in the State's brief:
(I)n the original disposition order, the trial court specifically held that the Appellant was going to be liable for restitution. Notice regarding the restitution hearing was sent to Appellant's address. Appellant attended both hearings along with her juvenile daughter and her daughter's attorney. Appellant addressed the trial court at length as to the fact that she did not feel that she could afford to pay the restitution and that she disagreed with the victim's valuation of the destroyed property. The trial court heard evidence on both of these issues and ruled in the victim's favor. At both the contempt hearings, the trial court inquired as to Appellant's income and expenses and made explicit findings of fact that she could afford to pay. Compare with Wolf v. HRS, 588 So.2d 335 (Fla. 5th DCA 1991) (parents not given notice, opportunity to defend claim, or present evidence at hearing). Appellant has been given sufficient notice and numerous meaningful opportunities to be heard. She has not been denied due process.
It is very clear that the September 19, 1999 order, which was sent to Fisher, gave actual notice of her potential liability. The February 14, 2000, restitution order gave this liability finality. Fisher did not appeal from the restitution order and, in fact, expressly stated to the court that she was not trying to avoid paying restitution. I would affirm the order of contempt and the order denying her motion to vacate the restitution order.
NOTES
[1] The tape of the hearing ends but apparently Fisher continued to testify.
[2] Canida v. Canida, 751 So.2d 647 (Fla. 3d DCA 1999), rev. denied, 767 So.2d 455 (Fla. 2000).
[3] The juvenile rules now contain specific provisions relating to parental sanctions:

Rule 8.030. Commencement of Formal Proceedings.
(b) Allegations as to Parents or Legal Guardians. In any delinquency proceeding in which the state is seeking payment of restitution by the child's parents or legal guardians, or any other penalty under chapter 985, Florida Statutes, a separate petition alleging the parents' or legal guardians' responsibility shall be filed and served on the parents or legal guardians of the child.
Rule 8.031. Petition for Parental Sanctions.
(a) Contents. Each petition directed to the child's parents or legal guardians shall be entitled a petition for parental sanctions and shall allege all facts showing the appropriateness of the requested sanction against the child's parents or legal guardians.
Rule 8.040. Process.
(b)(2) Petition for Parental Sanctions. A petition for parental sanctions may be served on the child's parents or legal guardians in open court at any hearing concerning the child, but must be served at least 72 hours before the hearing at which parental sanctions are being sought. The petition for parental sanctions also may be served in accordance with chapter 48, Florida Statutes.
[4] Lewis Carroll, Alice's Adventures in Wonderland.