959 So.2d 745 (2007)
Scott LEWIS, Carol Lewis and Scott Lewis Gardening & Trimming, Inc., a Florida corporation, Appellants,
v.
NICAL OF PALM BEACH, INC., a Delaware corporation, Amy Habie, Patrick Bilton and Boies, Schiller & Flexner, LLP, Appellees.
Nos. 4D05-1841, 4D05-1987, 4D05-2835.
District Court of Appeal of Florida, Fourth District.
April 11, 2007.
Order Denying Rehearing, Rehearing, Clarification and Certification August 1, 2007.
*747 Scott Lewis and Carol Lewis, West Palm Beach, pro se.
Jack Scarola of Searcy, Denny, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellant Scott Lewis Gardening & Trimming, Inc., and as Special Prosecutor.
Elliot H. Scherker, Alan T. Dimond and Daniel M. Samson of Greenberg Traurig, P.A., Miami, for appellees Nical of Palm Beach, Inc., and Amy Habie.
Bruce S. Rogow of Bruce S. Rogow, P.A., Fort Lauderdale, for appellees Nical of Palm Beach, Inc., and Patrick Bilton.
Jay M. Levy of Jay M. Levy, P.A., Miami, for appellee Boies, Schiller & Flexner, LLP.
Order Denying Rehearing, Rehearing En Banc, Clarification and Certification August 1, 2007.
STEVENSON, C.J.
These are consolidated appeals from three orders of the trial court on motions for contempt filed by Scott and Carol Lewis and Scott Lewis Gardening & Trimming, Inc. ("SLG & T"), seeking to hold Nical of Palm Beach, Inc. ("Nical"), Amy Habie, and Patrick Bilton in contempt of court. In the first of these orders, the trial court found Nical and Bilton guilty of indirect criminal contempt and, in the second order, pronounced sentence. The trial court imposed a fine upon Nical and sentenced Bilton to a term of incarceration, a portion of which is suspended upon his payment of a fine and his not further violating any orders of the court. As an additional sanction, the trial court disqualified the law firm that had been representing Nical, Habie, and Bilton. In the third order, the trial court denied a further motion to hold Nical, Habie, and Bilton in civil contempt. Scott and Carol Lewis and SLG & T (collectively referred to as "the Lewis parties") have appealed from all three orders; Nical, Habie, and Bilton (collectively referred to as "the Nical parties") have appealed from the order of indirect criminal contempt and the resulting sentence.
As a consequence of the discussion which follows: (1) we affirm the trial court's order to the extent that it holds Nical and Patrick Bilton in indirect criminal contempt as a consequence of Bilton's conversation with White; (2) we affirm the sentence imposed upon Bilton and the fine imposed upon Nical as a consequence of Bilton's conversation with White; (3) we reverse that portion of the order holding Nical in indirect criminal contempt as a consequence of the issuance of the subpoena to White and reverse the resulting fine imposed against Nical; (4) we reverse that portion of the criminal contempt sentencing order disqualifying the Nical parties' counsel and remand without prejudice for the trial court to once again impose such a sanction after affording Attorney Rash and the law firm notice and the opportunity to be heard on the issue; (5) we affirm the trial court's ruling that the evidence failed to support the imposition of a compensatory civil contempt sanction for any of the violations, but reverse the court's holding that a coercive civil contempt sanction was not available as a remedy; and (6) since these additional sanctions are, in fact, imposable, on remand, the trial court may reconsider the entire penalty scheme consistent with this decision.
The Initial Litigation & the Settlement
About ten years ago, Amy Habie purchased a landscape business, Scott Lewis *748 Gardening & Trimming, Inc., from its principal, Scott Lewis. Habie operated her newly-purchased landscape business under the name Nical of Palm Beach, Inc. Amy Habie owns 50% of Nical, Patrick Bilton 25%, and the Boies family trust the remaining 25%. The purchase agreement contemplated that Lewis would work for Habie. Disputes soon arose, and Lewis resumed his business under the name Scott Lewis Gardening & Trimming, Inc. Litigation between Nical, Scott and Carol Lewis, and SLG & T ensued. This litigation was resolved through a 1998 settlement agreement. The agreement provided in part that (1) Nical would transfer all right to the name "Scott Lewis Gardening & Trimming, Inc." to Lewis; (2) Nical would discontinue the use of any business name that includes "Scott Lewis" and discontinue such listings in telephone and other directories; and (3) the parties would refrain from contacting, communicating with, or soliciting one another's customers. The settlement was adopted by the trial court in a final judgment entered February 19, 1999.
Subsequent Violations of the Settlement Agreement & the Contempt Proceedings that Resulted in the Orders Appealed
The truce was short lived. In the years which followed, Habie and Nical were found in contempt on numerous occasions for violating court orders related to the settlement agreement, particularly involving the use of similar business names, misleading telephone and internet directory listings, contact with Lewis's clients, and the like. Some of the subsequent contempt violations, but not all, are discussed in Nical of Palm Beach, Inc. v. Lewis, 815 So.2d 647 (Fla. 4th DCA 2002). In regard to the instant appeal, Lewis filed a contempt motion on September 30, 2004, alleging that Nical, Habie, and Bilton had violated the settlement agreement and the court's orders by contacting one of Lewis's clients, the Town of Palm Beach, via a conversation between Bilton and Steve White, a town official. On December 7, 2004, the Lewis parties filed another motion, alleging Habie and Nical violated a court order when their counsel, Boies, Schiller & Flexner, issued a subpoena to White in violation of a July 6, 2000 order requiring court approval before the issuance of a subpoena to any individual on either party's client list.
An evidentiary hearing was held on the contempt motion and, on March 21, 2005, Judge Gerber entered an order finding Nical and Bilton guilty of indirect criminal contempt as a consequence of Bilton's conversation with White and finding Nical guilty of indirect criminal contempt as a consequence of the issuance of the subpoena. Habie was found not guilty of indirect criminal contempt concerning Bilton's conversation with White and no specific findings were made regarding Habie and the contempt charge stemming from the subpoena. The trial judge found the violations had to be characterized as criminal contempt because there was no purgeable, coercive sanction that could be imposed and a compensatory fine could not be imposed as Lewis had failed to demonstrate actual loss. As a sentence for the criminal contempt, in an order dated April 29, 2005, the trial court disqualified Boies, Schiller & Flexner from further representing Nical, Bilton, Habie, or any other Nical employee; imposed against Nical two $500 fines; and sentenced Bilton to 90 days incarceration with 60 days of that sentence suspended on the condition that Bilton pay a $500 fine and not further violate any court orders. The contempt and sentencing orders were timely appealed by both Lewis and Nical.
On June 2, 2005, Lewis filed a sworn motion for an order to show cause as to *749 why Nical, Habie, and Bilton should not be held in civil contempt, alleging that Bilton was communicating with Veronica Butler, a Lewis client, and doing more than $100,000 of work at the Eigelberger estate at the direction of Butler. In an order dated June 15, 2005, the trial court denied the motion. Among other things, the trial judge found that a compensatory fine was not appropriate because the allegations regarding financial damages were "conclusory" and that a coercive sanction was not appropriate because the motion failed to allege what act Nical, Habie, and/or Bilton had not performed "which a contempt order c[ould] coerce them into performing in the future." The Lewis parties appealed. Although the motion was denied "without prejudice," we find from the context of the case that the court's decision that it had no authority to order a coercive sanction was a definitive and final ruling.
The Nical Parties' Challenge to being held in Indirect Criminal Contempt & to the resulting Sentences
A. Patrick Bilton
The Nical parties first allege that the order holding Bilton in indirect criminal contempt is improper because Bilton was not specifically named in the February 1999 order. The order prohibits "Nical of Palm Beach, Inc." from contacting, communicating with, interfering with, or soliciting the Lewis parties' clients. Thus, as Bilton asserts, he is not specifically named in the injunctive order. This does not mean, though, that the order cannot be enforced against him or that he cannot be held in contempt for violating the order. Florida Rule of Civil Procedure 1.610(c) specifically provides that "[e]very injunction . . . shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction." See also Ex parte Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L.Ed. 1110 (1897) (upholding finding of contempt against employee in case where injunction was entered against employer and employee was aware of injunction); United States v. Paccione, 964 F.2d 1269, 1274 (2d Cir. 1992) (citing Federal Rule of Civil Procedure 65(d) and recognizing that "[o]rdinarily, the class of parties subject to an injunction or restraining order include the named parties, officers, agents, servants, employees, attorneys of the named parties and successors in interest to the property that is subject to the injunction or restraining order"); Neshaminy Water Res. Auth. v. Del-Aware Unlimited, Inc., 332 Pa.Super. 461, 481 A.2d 879, 884 (1984) (stating "where an injunction has issued against a corporation, it may be enforced against officers, agents, representatives, and employees of the corporation who knowingly violate its provisions"). Here, evidence at the contempt hearing established that Bilton was a shareholder and an employee of Nical and was aware of the order enjoining Nical from contacting and communicating with Lewis's clients.
We similarly reject the Nical parties' claims that the order holding Bilton in contempt must be reversed because the February 1999 order did not unambiguously prohibit contact with White and the evidence was insufficient to show Bilton's actions amounted to interference. First, while Steve White was not included on Lewis's list, the Town of Palm Beach was. White testified that he met with Bilton after Bilton called to inquire why one of his client's hedges had been cut back more drastically than others during the post-hurricane clean-up. According to White, Bilton said that he had legal problems with Lewis and it appeared as though the extreme cutting was done because the owner was a Nical customer. Bilton *750 reached out to the Town of Palm Beach and his contact and communication with White was in White's capacity as a representative of the Town of Palm Beach. Second, there was evidence of "interference" as Lewis testified that he was forced to spend a considerable amount of time and energy speaking with White and his superiors addressing concerns raised by Bilton's remarks.
B. Nical
The Nical parties insist the trial court erred in holding Nical in indirect criminal contempt of court as a consequence of the issuance of a subpoena to White. The Nical parties make several arguments: one, that Nical could not be held in criminal contempt as there was no evidence that Nical or its officers and/or shareholders had any involvement in its lawyers' decision to issue the subpoena; two, that the issuance of the subpoena was not in violation of the July 6th order; and, three, that the evidence was insufficient to demonstrate the subpoena was issued with the intent to violate the July 6th order. We find the first of these arguments to be persuasive and thus reverse the order appealed to the extent that it found Nical guilty of criminal contempt based upon the issuance of the subpoena and imposed a $500 fine for such conduct.
This, then, brings us to the trial court's decision to disqualify the firm of Boies, Schiller & Flexner from further representing Nical, Bilton, Habie, or any other employee, officer or agent of Nical in the matter. The disqualification of the firm was precipitated by evidence at the contempt hearing demonstrating that (1) Nical, Habie, and Bilton were not paying for the legal services provided by the firm; (2) Bilton was married to a firm attorney; (3) Habie was CFO of the firm; and (4) a trust benefiting David Boies's children had a 25% ownership interest in Nical. The sentencing order stated that the actions of Rash and the law firm throughout the history of the case demonstrated that the law firm's exercise of independent professional judgment had been "materially limited by the law firm's own interests" and "the financial ties between employees of the . . . law firm and employees of Nical." The trial court concluded that the firm had violated Rule 4-1.7(b) of the Rules Regulating the Florida Bar and referred the firm to the Bar. According to the trial court, disqualification was necessary to prevent further defiance of the court's orders in that "Nical and the Boies, Schiller & Flexner law firm already have been warned and reprimanded through prior contempt orders and fines levied upon Nical due in part to the law firm's intentional conduct."
The Nical parties contend the decision to disqualify its counsel must be reversed because the trial court lacked the authority to impose such a sanction as a punishment for indirect criminal contempt. We need not decide this issue as the trial court, unquestionably, had the authority to disqualify counsel for litigation misconduct and violation of the rules. See Carnival Corp. v. Beverly, 744 So.2d 489 (Fla. 1st DCA 1999). The Nical parties' claim that reversal of such sanction is required as neither it nor the law firm was given notice that disqualification was "on the table" is, however, another matter. Due process requires that a person be put on notice that he or she faces sanctions. See Fisher v. State, 840 So.2d 325 (Fla. 5th DCA 2003) (reversing order holding mother in contempt for failing to pay restitution where mother was never put on notice that she, personally, could be subject to sanctions, including contempt). Neither Attorney Rash nor the firm was named in the Lewis parties' motions for contempt or the *751 court's orders setting the same for hearing. And, while it is true that such a sanction was referenced in one of two proposed orders filed by the special prosecutor seven days prior to the hearing and mentioned by Lewis during his testimony at the hearing, we find that this was insufficient to put the firm on notice that sanctions, including disqualification, could be imposed against it. Cf. Clare v. Coleman (Parent) Holdings, Inc., 928 So.2d 1246 (Fla. 4th DCA 2006) (noting that while an attorney's pro hac vice status may be revoked when his misconduct effects the administration of justice, counsel cannot be disqualified without notice and an opportunity to be heard).
Our conclusion in this regard compels us to reverse the trial court's order to the extent that it disqualifies the Boies, Schiller & Flexner firm from further representing the Nical parties in this litigation. While we recognize that disqualification of counsel is an "extraordinary remedy," see Therriault v. Berghmans, 788 So.2d 1119, 1120 (Fla. 2d DCA 2001), having reviewed the extensive record in this case, we cannot agree with the Nical parties' claim that such a sanction was too harsh and thus an abuse of discretion. See Forbes v. State, 933 So.2d 706, 713-14 (Fla. 4th DCA 2006) (applying abuse of discretion standard in reviewing criminal contempt sentence). Our reversal on this issue is without prejudice for the trial court to once again take up the issue of the disqualification of counsel as a sanction after first affording Attorney Rash and the firm notice and the opportunity to be heard.
The Lewis Parties' Challenge to the Trial Court's Refusal to Hold the Nical Parties in Civil Contempt
"[F]ines for civil contempt are considered coercive or compensatory." Politz v. Booth, 910 So.2d 397, 398 (Fla. 4th DCA 2005). Here, the trial court concluded that neither Bilton's conversation with White nor the issuance of the subpoena could support a finding of civil contempt as neither type of sanction was sustainable:
[I]t is clear that the violations at issue cannot be characterized as ones for indirect civil contempt with a goal that is remedial and for the benefit of the complainants. The alleged violations are predicated upon past conduct, not continuing conduct. Thus, sanctions cannot be imposed for coercion into compliance because there is no continuing conduct for this Court to coerce, nor any sanction which can be eliminated by purging the conduct leading to the contempt.
Later, in its June 15, 2005 order denying the Lewis parties' next motion for civil contempt involving the contact with Veronica Butler, the trial court also ruled that it had no authority to enter coercive sanctions for the past violation of its orders. The Lewis parties challenge the trial court's refusal to hold the Nical parties in civil contempt, insisting both coercive and compensatory fines were appropriate for the alleged contempt in the orders appealed.
The Lewis parties argue that a coercive civil contempt sanction was available because (1) civil contempt is appropriate when a sanction or fine can be imposed to coerce not just action, but also inaction, on the part of the contemnor and (2) the imposition of a fine suspended on the condition that the contemnor comply with the court's orders in the future is an appropriate, coercive sanction for civil contempt. We agree on both counts.
"The same contemptuous conduct may be the subject of both criminal and civil proceedings" and whether a contempt is viewed as civil or criminal turns *752 upon the "`character and purpose' of the sanctions involved." Parisi v. Broward County, 769 So.2d 359, 363-64 (Fla.2000) (quoting Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)). "`Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court.'" Id. (quoting Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla. 1985)). In contrast, a sanction will be considered civil "if it `is remedial, and for the benefit of the complainant.'" Id. (quoting Bagwell, 512 U.S. at 827-28, 114 S.Ct. 2552). In order for a sanction to qualify as one imposable for civil contempt, it must contain a purge provision that affords the contemnor the opportunity to avoid the sanction. See Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 829, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).
Nothing in these fundamental principles underlying the distinction between civil and criminal contempt precludes the imposition of a sanction intended to coerce inaction. And, in United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Supreme Court itself imposed a suspended fine as a coercive civil contempt sanction for violation of an injunctive order prohibiting the union and its president from encouraging workers to strike. Many years later in International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 834, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), the Court declined to categorically hold that simply because an order prohibited an act, its violation could not give rise to a coercive civil contempt sanction. Florida's courts have taken a consistent view, repeatedly recognizing that "[i]f the purpose of the proceeding is to coerce action or non-action by a party, the order of contempt is characterized as civil." Pugliese v. Pugliese, 347 So.2d 422, 424 (Fla.1977) (emphasis added); see also Andrews v. Walton, 428 So.2d 663, 665 (Fla.1983) (citing this language from Pugliese). And, in Parisi, in the context of a discussion regarding the distinction between a valid coercive fine and a fine that would be criminal in nature, our supreme court wrote "the imposition of a fixed fine that is `imposed and suspended pending future compliance' with the court's prior orders is considered a purgeable sanction." 769 So.2d at 365 (quoting Bagwell, 512 U.S. at 829, 114 S.Ct. 2552). We thus hold that a coercive civil contempt sanction in the form of a fine suspended on future compliance with the court's order was available to the trial court in this case. We affirm the trial court's denial of any compensatory sanctions based on the evidence presented.
We have carefully considered the other issues raised by the Nical parties and the Lewis parties, but find no error beyond that discussed in this opinion. Accordingly, the orders on appeal are affirmed in part and reversed in part. This cause is remanded for further proceedings consistent with this decision.
Affirmed in Part, Reversed in Part, and Remanded.
WARNER and TAYLOR, JJ., concur.

ON MOTIONS FOR CLARIFICATION, REHEARING, REHEARING EN BANC & CERTIFICATION
PER CURIAM.
Following issuance of this court's opinion, both the Lewis parties and the Nical parties filed motions seeking rehearing, rehearing en banc, and/or certification in this case. Carol and Scott Lewis filed a pro se motion seeking clarification. Having carefully considered the arguments raised, we deny the parties' motions in all respects. On the matter of the availability *753 of a suspended fine as a coercive, civil contempt sanction, we acknowledge that the Supreme Court's approval of such a sanction has been limited to the circumstance where "the conduct required of . . . [the contemnor] to purge the suspended fine was relatively discrete." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 830 n. 4, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). We believe the actions prohibited by the parties' prior settlement agreement are sufficiently definite such that a purge provision specifying "discrete" conduct in which the Nical parties must not engage if they are to avoid the suspended fine can be crafted by the trial court.
WARNER, STEVENSON and TAYLOR, JJ., concur.