981 So.2d 502 (2008)
NICAL OF PALM BEACH, INC., a Florida Corporation, and Amy Habie, individually, Appellants,
v.
Scott LEWIS, Carol Lewis, and Scott Lewis' Gardening & Trimming, Inc., a Florida Corporation, Appellees.
Nos. 4D06-3521, 4D06-4605.
District Court of Appeal of Florida, Fourth District.
March 19, 2008.
Rehearing Denied June 5, 2008.
*504 Elliot H. Scherker, Alan T. Dimond, Elliot B. Kula and Daniel M. Samson of Greenberg Traurig, P.A., Miami, and Mark F. Bideau of Greenberg Traurig, P.A., West Palm Beach, for appellants.
Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, and Scott Lewis and Carol Lewis, Pro se, West Palm Beach, for appellees.
MAY, J.
We enter the multi-faceted world of contempt as Amy Habie and Nical of Palm Beach, Inc. appeal an amended judgment on a motion for indirect civil contempt. The amended judgment provides for a suspended fine and term of imprisonment that can be purged by NOT committing any future violation of a 1998 settlement agreement. Scott Lewis, Carol Lewis, and Scott Lewis' Gardening & Trimming, Inc. cross-appeal the amended judgment as it relates to the trial court's finding that the Nical parties were not guilty of indirect civil contempt for discovery violations. The Nical parties also appeal an attorney's fees and cost judgment rendered in conjunction with the amended judgment. We affirm the amended judgment as it relates to both the suspended civil contempt sanction and the trial court's finding of "not guilty" on the other motion for contempt. We reverse the attorney's fees and cost judgment and remand the case to the trial court to apportion the fees related to the successful motion for contempt.
These parties have been litigating for many years, the history of which has been well-documented in prior opinions from this court. See, e.g., Lewis v. Nical of Palm Beach, Inc., 959 So.2d 745 (Fla. 4th DCA 2007); Nical of Palm Beach, Inc. v. Lewis, 815 So.2d 647 (Fla. 4th DCA 2002). In a nutshell, the Nical parties purchased a lawn and gardening service from the Lewis parties. Disputes arose over the use of the business name and solicitation of the parties' clients and litigation ensued. The parties reached a settlement agreement in 1998, which was approved by the court. Since that time, numerous contempt proceedings have been initiated, primarily by the Lewis parties. Here, the Nical parties challenge the trial court's imposition of a coercive civil sanction and award of attorney's fees and costs while the Lewis parties cross-appeal the trial court's finding that the Nical parties were "not guilty" of contempt relating to discovery violations.
The Nical parties argue that the coercive civil sanction is actually criminal in nature because it is punitive, instead of coercive or compensatory, and incapable of being purged. As such, they argue the trial court could not have imposed it without the requisite due process safeguards afforded in criminal proceedings. The Lewis parties argue that the trial court creatively fashioned a coercive civil contempt sanction to finally force the Nical parties into compliance with the 1998 settlement agreement. This case explores the multi-faceted world of contempt and how this unique sanction fits within its confines.
This case presents mixed questions of law and fact. We review the legal issues de novo while the trial "court's factual findings must be sustained if supported by competent substantial evidence." Levey v. D'Angelo, 819 So.2d 864, 867 (Fla. 4th DCA 2002).
The United States Supreme Court's most recent opinion on the subject of contempt sanctions is International Union, *505 United Mine Workers of America v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). In Bagwell, the Court considered an order that prospectively set the sanctions for future violations or breaches of an injunction. In doing so, the Court comprehensively reviewed the challenging law on contempt.
"Criminal contempt is a crime in the ordinary sense," . . . and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings". . . . In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.
Id. at 826-27, 114 S.Ct. 2552 (citations omitted).
The Court noted that the "character and purpose" of the sanction reflects whether it is civil or criminal in nature. Id. at 827, 114 S.Ct. 2552. If the purpose is remedial and serves to benefit the movant, it is considered civil. Id. Indeed, "[a] contempt fine accordingly is considered civil and remedial if it either `coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.' Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." Id. at 829, 114 S.Ct. 2552 (citation omitted).
A per diem fine exerts coercive pressure. "Less comfortable is the analogy between coercive imprisonment and suspended, determinate fines. . . . [F]ixed fines also may be considered purgable and civil when imposed and suspended pending future compliance." Id. For this reason, the Court had, forty-seven years prior, approved a suspended fine of $2,800,000 against a union as a coercive civil fine that was purgeable "through full, timely compliance with the trial court's order." Id. at 830, 114 S.Ct. 2552 (discussing United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947)).
The Court's willingness to approve the coercive civil sanction in United Mine Workers appears to have been based on the discrete conduct required to purge the suspended fine. Id. at 830 n. 4, 114 S.Ct. 2552. Significantly, the Court distinguished the prospective future fines in Bagwell from "coercive day fines, or even suspended fines" such as that found in United Mine Workers. Id. at 837, 114 S.Ct. 2552.
We have previously found those same distinctions present in the litigation among these parties. See Lewis, 959 So.2d at 753. "We believe the actions prohibited by the parties' prior settlement agreement are sufficiently definite such that a purge provision specifying `discrete' conduct in which the Nical parties must not engage if they are to avoid the suspended fine can be crafted by the trial court." Id. at 753. Indeed, we invited the trial court in this case to fashion just such a sanction.
Our supreme court explored these same intricate contempt issues in Parisi v. Broward County, 769 So.2d 359 (Fla.2000). "[I]f incarceration is imposed as a coercive civil contempt sanction, the ability to purge the contempt allows the contemnor to `carr[y] the keys of his prison in his own pocket.'" Id. at 365 (quoting Bagwell, 512 U.S. at 828, 114 S.Ct. 2552). Likewise, a "fixed fine that is `imposed and suspended pending future compliance' with the court's prior orders is considered a purgeable sanction." Id. (quoting Bagwell, 512 U.S. at 829, 114 S.Ct. 2552).
*506 There can be no doubt that the trial court in this case struggled to fashion an order to accomplish a goal  coercive compliance with the settlement agreement. The sanction is certainly not a "flat, unconditional fine"; it is a coercive suspended sanction. The suspended fine and period of incarceration has not been imposed on the Nical parties and will not be imposed if they finally comply with the court-approved settlement agreement.
Nevertheless, the Nical parties argue that the court's order is fatally flawed because there is no specific date by which they can comply with the settlement agreement and thereby purge the contempt. We disagree. The unique issue here is whether a coercive civil sanction that is suspended ad infinitum provides the contemnor with the requisite ability to purge. We hold that it does.
The lack of a point certain in the future to purge the contempt is the result of the terms agreed upon by the parties to the settlement agreement. They simply do not limit the time frame in which the Nical parties are to have no contact with the Lewis parties' customers. Thus, to coerce compliance, the court necessarily had to make the coercive civil sanction coextensive in time with the term of the settlement agreement. Any lesser time frame would only serve to coerce compliance for a limited part of the life of the settlement agreement, ultimately defeating the purpose of the coercive civil sanction.
In Lewis, we reversed the trial court's refusal to impose coercive civil sanctions against the Nical parties. In doing so, we stated that "a coercive civil contempt sanction in the form of a fine suspended on future compliance with the court's order was available to the trial court." Lewis, 959 So.2d at 752. The trial court did just that. We therefore affirm the order as to the imposition of the suspended fine and term of incarceration.
The Nical parties next argue that the trial court erred in its award of attorney's fees and costs. They suggest the court impermissibly awarded attorney's fees and costs beyond those related to the litigation of the successful motion for contempt. We agree.
In its order, the trial court stated:
While Plaintiffs may again argue, as they did before with Judge Crow, that they prevailed on isolated motions, the Court finds that, as an additional sanction, Defendants are entitled to recover all fees and costs since the last award. . . . Additionally, given the Plaintiffs' continued misconduct, and in keeping with Judge Kroll's ruling in the affirmed fees' award of March 28, 2000, any costs which might not otherwise be taxable are awarded under the contempt authority of this Court as an additional coercive sanction.
In a subsequent order, the court issued a fee and cost award for the period of April 30, 2005, to August 17, 2006, in the amount of $215,076.94.[1]
A review of the trial court's order reveals the trial court's frustration with the Nical parties' multiple violations of the settlement agreement, the failure of all prior-imposed sanctions to coerce compliance, and the need to impose a sanction that would impact the Nical parties. Despite the numerous findings supporting the trial court's decision, the award of attorney's fees and costs for the entire period from April, 2005, to August, 2006 as a *507 sanction is flawed. The settlement agreement actually provides the basis for the imposition of attorney's fees and costs. Nevertheless, the trial court specifically indicated that the fee and cost award is an additional sanction. As a civil contempt sanction, it must be supported by competent substantial evidence and either compensatory or capable of being purged. Bagwell, 512 U.S. at 829, 114 S.Ct. 2552. While we agree that the sanction is supported by competent substantial evidence, the amount is neither compensatory nor is the sanction purgeable.
The Lewis parties rely on Levine v. Keaster, 862 So.2d 876 (Fla. 4th DCA 2003). However, Levine does not support their position. Levine reiterates the well-established law that "[i]f a party is found in contempt, it is proper for the court to compensate the injured party by assessing attorney's fees for the contempt proceedings," which compensation "must be based upon evidence of an injured party's actual loss." Id. at 880. Thus, Levine actually supports a reversal of the fees and cost judgment.
For these reasons, we reverse and remand the order on attorney's fees and costs. We direct the trial court to apportion those fees and costs attributable to the successful motion for contempt.
On cross-appeal, the Lewis parties argue the trial court erred in denying their motion to hold the Nical parties in contempt for numerous discovery violations. We disagree. The trial court made specific findings of fact and concluded the Nical parties did not willfully violate the discovery order. A trial court's order is clothed with the presumption of correctness and will be reversed only if the finding is not based on competent substantial evidence. Lewis, 815 So.2d at 651. We therefore affirm the amended judgment as it relates to the contempt motion focused on the alleged discovery violations.
Affirmed in part; reversed in part and remanded.
STONE, J., and TUTER, JACK, Associate Judge, concur.
NOTES
[1] The parties do not dispute the reasonableness of the amount awarded, but only that the court could not award more than those fees and costs expended in litigating the successful motion for contempt.