DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DAN HUBER, MARY HUBER** and **LADS NETWORK SOLUTIONS, INC.,**
a Missouri Corporation,
Appellants,

v.

**DISASTER SOLUTIONS, LLC,** and **SCOTT LEWIS,**
Appellees.

Nos. 4D13-4360 and 4D14-520

[December 9, 2015]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Joseph George Marx, Judge; L.T. Case No. 502012CA002382XX.

Stewart Valencia of Holman, Cohen & Valencia, Hollywood, for appellants.

Robert J. Hauser of Pankauski Law Firm PLLC, West Palm Beach, for appellee Disaster Solutions, LLC.

Scott Lewis, West Palm Beach, pro se.

CONNER, J.

The appellants, Dan Huber, Mary Huber, and LADS Network Solutions, Inc. ("LADS"), appeal two trial court orders finding them in civil contempt of court for violating court orders and an agreed injunction requiring the appellants not to disclose confidential information to third parties. The contempt orders impose two monetary sanctions, one compensatory, the other coercive, in favor of the appellees, Disaster Solutions, LLC ("DSL") and Scott Lewis ("Lewis"). The coercive monetary sanction was suspended on the condition that the appellants timely comply with court orders in the future, including a requirement that the compensatory sanction be paid within ten days.

The appellants raise numerous grounds for reversal. We affirm, without discussion as to all of the grounds for reversal raised by appellants, except one. The sole issue we analyze is the propriety of

imposing a deadline for payment of a compensatory contempt sanction to avoid the imposition of a suspended coercive contempt fine. Finding no statutory, rule, or case law authority for imposing a deadline for the payment of a compensatory civil fine or sanction, we reverse as to that issue alone.

*Factual Background and Trial Court Proceedings*

LADS is in the business of developing and licensing software programs, specializing in the use of Global Positioning Satellite ("GPS") technology. The principals in LADS are Dan and Mary Huber.

DSL performs services in the disaster relief industry. In 2006, its principal, Lewis, started working on inventing software programs which would incorporate Bluetooth functionality into GPS technology to enable cellular phones to exchange data using Bluetooth capability when the Internet or cellular phone towers are inoperable.[1]

In 2010, the two companies entered into a software development agreement. Because DSL was sharing intellectual property, for which patent applications were pending, the software development agreement contained confidentiality provisions. One of the provisions specifically provided that if LADS was ordered to disclose information deemed confidential under the agreement to a third party as a result of litigation by or against LADS, LADS was to promptly notify DSL so that DSL would have the opportunity to seek protective orders against the disclosure.

In 2011, the deadline for the development of the software was not met. By 2012, the relationship between the companies had soured to the point that DSL sued LADS, and LADS countersued.

Early in the litigation, the parties mutually consented to the entry of a temporary injunction against disclosure of information to third parties, as provided in the software development agreement. Subsequently, LADS used the confidentiality provisions of the software development agreement and the temporary injunction as excuses for noncompliance with discovery requests propounded by DSL. There were several motions to compel by DSL, leading to multiple sanctions orders against LADS and the Hubers.

---

[1] "Bluetooth Smart technology is a wireless communications system intended to replace the cables connecting many types of devices, from mobile phones and headsets to heart monitors and medical equipment." Bluetooth, http://www.bluetooth.com/Pages/what-is-bluetooth-technology.aspx (Oct. 30, 2015).

During the litigation in the trial court below, DSL discovered that LADS and the Hubers were embroiled in litigation in another state with a DSL competitor. In the course of the foreign litigation, LADS had responded to discovery requests by the competitor, and in doing so, redacted all information about LADS that it deemed was confidential, but did nothing to protect disclosure of information about DSL that was deemed confidential under the software development agreement. Equally important, LADS did nothing to give DSL prior warning that the discovery disclosure was forthcoming in the foreign litigation.[2] DSL filed a notice and motion seeking an order to show cause why LADS and the Hubers should not be adjudged in civil contempt of court.

After an evidentiary hearing on the civil contempt motion, the trial court entered a detailed order ("October 2013 order"), with extensive findings of facts and conclusions of law, adjudging LADS and the Hubers in civil contempt. As discussed in more detail below, the order imposed two monetary sanctions, which the case law frequently refers to as contempt fines. One of the monetary sanctions was compensatory; the other was coercive.

The coercive sanction was in the amount of $100,000, suspended as follows:

> Further, the Defendants can avoid ever paying this $100,000 by merely complying with this Court's orders moving forward. This $100,000 compensatory coercive sanction is suspended (in accordance with the procedures approved in *[International Union, United Mine Workers v.] Bagwell[, 512 U.S. 821 (1994)]* and *Nical [of Palm Beach, Inc.] v. Lewis*[, 981 So. 2d 502 (Fla. 4th DCA 2008)]) upon condition that the Defendants strictly and timely comply with all orders of this Court and satisfy all future discovery obligations in strict adherence to the Florida Rules of Civil Procedure. . . . Should another violation be proven, this $100,000 shall be payable immediately to the Plaintiffs from the Defendants, who are jointly and severally liable for this $100,000 sanction payment.

The October 2013 order established the entitlement to a compensatory monetary sanction, but not the amount. The amount was established by a subsequent order ("January 2014 order"), after a further evidentiary

---

[2] There was also evidence that prior to suit being filed by DSL, LADS sent a letter threatening to disclose information to DSL's competitor in retaliation for terminating the software development agreement.

3

hearing. Specifically important to the issue decided by this opinion, the October 2013 order provided:

> As Defendants' timely payments have been one of the violations sanctioned several times before, in regards to the determination of the amount of fees and costs of this order, the Court orders that *full payment [of the compensatory sanction] shall be made within ten calendar days of said determination. Any delay whatsoever in this reimbursement shall be considered a violation of this Order, which shall result in the immediate payment to the Plaintiffs of the $100,000 suspended judgement/fine.* [sic]

(emphasis added). The January 2014 order made no reference to the provision in the October 2013 order that failure to timely pay the compensatory sanction would result in the imposition of the coercive sanction.

The appellants gave notice of their appeal regarding the October 2013 order and the January 2014 order.

## *Legal Analysis*

A trial court's contempt order is reviewed on appeal with a presumption of correctness and will not be reversed "unless a clear showing is made that the trial court either abused its discretion 'or departed so substantially from the essential requirements of law as to have committed fundamental error.'" *Lewis v. Nical of Palm Beach, Inc.*, 10 So. 3d 159, 163 (Fla. 4th DCA 2009) (quoting *Northstar Invs. & Dev., Inc. v. Pabaco, Inc.*, 691 So. 2d 565, 566 (Fla. 5th DCA 1997)) (quotation marks omitted). We review the legal issues *de novo* and whether factual findings are supported by competent substantial evidence. *Nical of Palm Beach, Inc. v. Lewis*, 981 So. 2d 502, 504 (Fla. 4th DCA 2008).

*Monetary Civil Contempt Sanctions*

Trial "courts have broad discretion in formulating a valid contempt sanction" and "the ability . . . to impose creative contempt sanctions." *Parisi v. Broward Cnty.*, 769 So. 2d 359, 367 (Fla. 2000). Discretion to flexibly and creatively formulate an appropriate civil contempt sanction is needed because "[t]oo restrictive a view of a court's contempt powers would render it impotent like a toothless lion, who can only roar in dismay at the disobedience of his decrees." *Riley v. Riley*, 509 So. 2d 1366, 1370 (Fla. 5th DCA 1987). However, the discretion and flexibility granted to the trial courts sometimes make appellate analysis confusing. It has been said that

"[f]ew legal concepts have bedeviled courts, judges, lawyers and legal commentators more than contempt of court." *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 827 n.3 (1994) (quoting Robert J. Martineau, *Contempt of Court: Eliminating the Confusion between Civil and Criminal Contempt,* 50 U. Cin. L.Rev. 677 (1981)).

Although flexibility and creativity in formulating civil contempt sanctions is clearly acknowledged in our case law, our supreme court has also said:

> While the inherent contempt power of a single judge is a bulwark of our legal system, the United States Supreme Court has also recognized that contempt power "uniquely is 'liable to abuse.'" *Bagwell,* 512 U.S. at 831, 114 S.Ct. 2552. This is because in the area of civil contempt proceedings, "the offended judge [is] solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Id.* Thus, a balance must be struck between the recognition that courts are vested with contempt powers to vindicate their authority and the necessity of preventing abuse of these broad contempt powers. *See id.* at 831-32, 114 S.Ct. 2552.

*Parisi,* 769 So. 2d at 363. The court went on to note that "the Supreme Court recognized in *Bagwell,* most contempt sanctions 'to some extent punish a prior offense as well as coerce an offender's future obedience.'" *Id.* at 364 (quoting *Bagwell,* 512 U.S. at 828). For that reason, there must always be concern as to the extent a sanction is punitive. That is because the procedural safeguards for punitive sanctions are much more stringent than for remedial sanctions. *Id.* at 364. ("[T]he nature of the contempt both determines the procedures for adjudication and sets the parameters for the sanctions that can be imposed.").

Monetary contempt sanctions are classified as either "compensatory" or "coercive" sanctions. *Id.* at 363. More precisely, "[a] contempt sanction is considered civil if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Nical of Palm Beach, Inc. v. Lewis,* 815 So. 2d 647, 650 (Fla. 4th DCA 2002) (quoting *Bagwell,* 512 U.S. at 829). Stated another way, sanctions, both coercive and compensatory, which are "remedial[] and for the benefit of the complainant" are considered as civil contempt sanctions. *Parisi,* 769 So. 2d at 364. Although there is "a broad arsenal of coercive

civil contempt sanctions available to the trial court,"[3] *id.* at 365, most of the case law addresses the imposition of civil contempt fines as the sanction.

It may seem anomalous to refer to a "fine" as "compensation," but the case law clearly discusses instances in which a contempt fine was used to compensate for losses sustained by contemptuous violations of a court orders. *Id.* at 366 ("[A] monetary fine as a contempt sanction may be legally imposed as . . . a compensatory contempt sanction."). More importantly, and contributing to the difficulty of the analysis, civil contempt fines can be imposed to both *compensate* **and** *coerce.* *Johnson v. Bednar*, 573 So. 2d 822, 824 (Fla. 1991) ("Sanctions in civil contempt proceedings may be employed for either *or both* of two purposes: to compensate the injured party for losses sustained, and to coerce the offending party into compliance with a previously issued court order.") (emphasis added) (citation omitted).

Even though monetary sanctions may serve both compensatory and coercive functions, there are important distinctions, regarding function, as to the basis for determining the *amount* of the sanction and how the sanction is *employed or carried out.* Regarding contempt fines, our supreme court has written:

> If compensation is intended, the fine must be based on evidence of the injured party's *actual loss.* [citation omitted] However, if the purpose of imposing a fine is to coerce compliance[,] the court may exercise its discretion, taking into consideration *the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of a particular sanction in achieving the result desired.*[]
>
> . . . .
>
> [When the fine is imposed to coerce compliance, the] court's task in measuring a coercive fine is not to determine what would compensate the aggrieved party, but rather the court must determine *what is necessary to force the contemnor into*

---

[3] At least one case has identified that the "broad arsenal" includes "incarceration, garnishment of wages, additional employment, the filing of reports, additional fines, the delivery of certain assets, the revocation of a driver's license." *Parisi*, 769 So. 2d at 365 (quoting *Gregory v. Rice*, 727 So. 2d 251, 254 (Fla. 1999)). *Parisi* also recognizes that it is permissible for the trial court to use a "hybrid contempt sanction." *Id.* at 367.

*compliance with the court order.*  In making this determination the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired," as well as "*the amount of defendant's financial resources* and the consequent seriousness of the burden to that particular defendant."

*Id.* at 824-25 (emphasis added).

As can be seen from the principles announced in *Johnson,* (1) the *amount* of a contempt fine *for compensatory purposes* is limited to the amount of *actual loss* incurred by the violation;[4] and (2) the *amount* of a contempt fine *for coercive purposes* is determined by the amount *necessary to force the contemnor into compliance with the court order*, taking into consideration *the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of a particular sanction in achieving the result desired, and the amount of defendant's financial resources.*  Regarding the amount of a compensatory contempt fine, another important distinction to be made is that the actual loss must be directly related to the violation proven.  *Nical*, 815 So. 2d at 651 (reversing a compensatory contempt fine measured by the amount lost by entering into a settlement agreement, rather than actual damage caused by not complying with a court order).

Another distinction between a coercive contempt fine and a compensatory contempt fine is that a coercive fine must afford the contemnor the opportunity to purge.  *Parisi*, 769 So. 2d at 365 ("[T]he key safeguard in civil contempt proceedings is . . . that the contemnor has the ability to purge the contempt.").  "[A] fixed fine that is 'imposed and suspended pending future compliance' with the court's prior orders is considered a purgeable sanction."  *Nical*, 981 So. 2d at 505 (quoting *Bagwell*, 512 U.S. at 829).  However, the conduct required of the contemnor to avoid payment of the suspended fine must be "discrete" enough, in the sense of clearly stated or specified, for the contemnor to be aware of what conduct will trigger the imposition of the suspended fine.

---

[4] It is important to note that in *Johnson,* our supreme court equated the term "actual loss" with "actual damages."  For example, the court wrote:

> In any event, we disagree that all civil contempt fines must be limited to compensatory fines measured by damages suffered by the injured party.  A contempt fine must be related to actual damages when the trial court imposes a fine for the purpose of compensating a party for losses sustained.

*Johnson,* 573 So. 2d at 825.

7

*Lewis v. Nical of Palm Beach, Inc.*, 959 So. 2d 745, 753 (Fla. 4th DCA 2007) (on motion for clarification).

*Application of the Legal Principles to This Case*

Our analysis must begin with determining the specifics of what the trial court adjudicated in the October 2013 order regarding civil contempt sanctions. Our review of the October 2013 order leads us to conclude the trial court imposed two separate monetary contempt sanctions for the violation of multiple prior court orders. The first monetary sanction was intended to be compensatory, awarding fees and costs incurred for enforcing court orders pertaining to confidentiality, with the amount to be determined at a later hearing. The second monetary sanction was intended to be coercive and was repeatedly referred to as a coercive fine. The amount of the second sanction was established as $100,000. As we have previously stated, we affirm the trial court as to the $100,000 coercive fine without further discussion.

The amount imposed as the first monetary sanction was ultimately determined to be $179,270.93, as established in the January 2014 order. As to the first sanction, our review is problematic because it is unclear if the award was intended to be solely a compensatory sanction or a "hybrid" sanction to compensate *and* impose coercion. What creates the problem for our analysis is the requirement in the October 2013 order that once the amount of compensation is determined, *the compensatory amount must be paid within ten days to avoid the imposition of the $100,000 coercive fine.*

Appellants contend that a compensatory sanction is limited to actual loss incurred by their violations, and thus the award is in the nature of damages. Appellants further argue that the provision of the January 2014 order establishing the amount of compensation, followed by the words "for which let execution issue," clearly establishes the sanction is in the nature of a final judgment for damages, and subject to enforcement by the provisions of Florida Rule of Civil Procedure 1.570(a).[5][6] Appellants further

---

[5] Florida Rule of Civil Procedure 1.570(a), provides:
> (a) Money Judgments. Final process to enforce a judgment solely for the payment of money shall be by execution, writ of garnishment, or other appropriate process or proceedings.

[6] Appellees mention in their answer brief that in entering the January 2014 order, the trial court made no mention of the ten-day requirement to pay the award imposed in the October 2013 order. Neither side has raised any contention that there is an inconsistency between the two orders, so we do not address the issue either.

argue the law is clear that contempt sanctions in the form of coercive fines cannot be used to enforce the payment of damages. Appellees do not address those arguments on appeal.

We agree with appellants that the $179,270.93 compensatory sanction is in essence an award of damages, enforceable by the procedures under Florida Rule of Civil Procedure 1.570(a). Our research has revealed no Florida case law support, outside the realm of family law, for the contention that a *coercive* contempt fine (in this case $100,000) may be used to enforce payment of a *compensatory* contempt fine or sanction. Moreover, within the realm of family law, the Florida case law does not support such a contention.

In the context of family law, it is well-settled that it is improper for the trial court to use the power of civil contempt to enforce marital property settlement agreements and contractual debts. *Weiss v. Weiss*, 100 So. 3d 1220, 1224 (Fla. 2d DCA 2012) ("Under Florida law, the remedies available to enforce the breach by a party of a property settlement provision in a marital settlement agreement are those available to creditors against debtors.") (citation omitted); *Pineiro v. Pineiro*, 988 So. 2d 686, 687 (Fla. 4th DCA 2008) (explaining that the contempt power of the court cannot be used to enforce debts); *Montanez v. Montanez*, 697 So. 2d 184, 185 (Fla. 2d DCA 1997) (explaining that it is well-settled in Florida that debts not involving support may not be enforced through contempt, even if given effect in a final judgment of dissolution, because to do so violates constitutional provision prohibiting imprisonment for debt). Imposing coercive contempt fines to enforce payment of compensatory awards has been allowed in the context of family law only when the compensatory award relates to spousal or child support, enforcement of a child custody order, or orders awarding attorney's fees and costs.[7] *See Fishman v. Fishman*, 656 So. 2d 1250, 1252 (Fla. 1995) ("[T]he use of civil contempt powers for the enforcement of support payments in domestic relations cases has been approved."); *Habie v. Habie*, 654 So. 2d 1293, 1294-95 (Fla. 4th DCA 1995); *Robbie v. Robbie*, 683 So. 2d 1131, 1132 (Fla. 4th DCA 1996). We perceive no valid reason to extend principles applicable to a very narrow range of family law cases to make an exception to the general rule that contempt powers may not be used to enforce a compensatory sanction in this case.

---

[7] The propriety of using coercive sanctions to enforce the payment of attorney's fees in family cases has been questioned in this District by concurring opinions authored by two different judges. *See Robbie v. Robbie*, 683 So. 2d 1131 1132-33 (Fla. 4th DCA 1996); *Wertkin v. Wertkin*, 763 So. 2d 465, 466 (Fla. 4th DCA 2000).

In conclusion, we determine that no trial court error has been demonstrated regarding the imposition of the suspended $100,000 coercive fine established by the October 2013 order or the imposition of a compensatory fine or sanction for damages in the amount of $179,270.93 for actual loss suffered by the appellees due to the appellants multiple, willful violations of court orders. However, the trial court erred in ordering the payment of the compensatory sanction within ten days after the amount was reduced to a final judgment. As to that error, we reverse and remand for the trial court to strike that portion of the October 2013 order.

*Affirmed in part, reversed in part and remanded.*

STEVENSON and DAMOORGIAN, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***